People of the State of Illinois, Plaintiff-Appellee, v. James Smith, Defendant-Appellant.

Gen. No. 50,054.

First District, Second Division.

February 9, 1965.

Rehearing denied and opinion modified March 2, 1965.

Thomas L. Stevens, of Chicago, for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane, Assistant State's Attorney in charge of Appeals Department and Ronald Butler, Assistant State's Attorney, of counsel), for appellee.

MR. PRESIDING JUSTICE BURKE delivered the opinion of the court:

Defendant was indicted for taking indecent liberties with Vernon Hill and with Steven Hill, ages ten and eight respectively at the time of the incidents complained of. Indictment No. 61–2159 charged defendant with taking indecent liberties with Vernon Hill on July 8, 1961, and Indictment No. 61–2160 charged him with taking indecent liberties with Steven Hill on July 1, 1961. At a bench trial a finding of not guilty was entered on the charge involving Steven Hill at the close of the State's evidence. At the close of all of the evidence, defendant was found guilty on the charge involving Vernon Hill and was sentenced to five to fifteen years in the penitentiary. He appeals from the conviction.

Vernon and Steven Hill are brothers. They reside with their mother, grandparents and six brothers and sisters on West 59th Street in Chicago, and are the oldest of the eight Hill children. Defendant resides a short distance down the street from the Hill home; he

rents a bedroom in an apartment owned by Mrs. Estelle Black.

Vernon Hill testified he was returning home about 9:00 p. m. on July 8, 1961, when he was stopped by the defendant across the street from his, Vernon's, home. Defendant asked him if he would do some work for defendant, to which Vernon agreed. The pair proceeded to the defendant's home, through the apartment and into the basement of the building via a stairway on the rear porch. Defendant turned on the light, locked the door and forced Vernon to perform an indecent act with defendant, the details of which are unnecessary to relate here. Vernon stated that defendant choked him and threatened to kill him if he told anyone of the incident. They were in the basement some two hours, until about 11:30 p. m. Defendant then took Vernon by the hand and walked him home. When they arrived at the Hill home a few minutes later, Vernon's mother, her cousin from the west side and her cousin's husband were standing on the front porch. Defendant told Mrs. Hill that Vernon was cleaning defendant's room and emptying trash that evening and asked her not whip the boy for arriving home so late; he then gave Mrs. Hill a dollar for the boy's services. This conversation lasted about three minutes, during which time Vernon remained silent.

Vernon testified that his grandmother called him upstairs and asked him why he was out so late, whereupon he said he would tell if he did not receive a whipping and related the incident with defendant to her. Some two or three minutes after Vernon left the conversation on the front porch, Mrs. Hill joined him and the grandmother upstairs. Over objection of defense counsel Vernon stated he told his mother what had occurred and that at this time only he, his mother and his grandmother were present. The police were then called.

On direct examination Vernon testified the night of July 8th was the first time he met defendant, but on cross-examination he admitted having known of defendant and having seen him prior thereto but stated that he had no previous personal contact with the defendant.

Vernon's mother, Ruby Hill, testified she met defendant for the first time in the latter part of June through her son, Steven. She saw defendant again on the 4th of July, when he attended a party at the Hill home and took photographs of the Hill family, and again saw defendant on the 8th of July when he came to the Hill home looking for Steven. About 11:30 on the 8th of July, Mrs. Hill, her cousin from the west side and her cousin's husband were standing on the front porch of the Hill home waiting for Vernon. She stated defendant and Vernon arrived together and she asked defendant why he kept her son out from 9:30 to 11:30. Defendant answered that Vernon was cleaning defendant's room and emptying the trash, asked Mrs. Hill not to whip the boy and gave her a dollar for his services. At this point, Mrs. Hill testified, Vernon's brother told Vernon his grandmother wanted to see him and he went upstairs. Several minutes later Mrs. Hill went upstairs where Vernon, in the presence of the entire family, related the incident with defendant. Defense counsel again objected to the testimony as to what was said by Vernon concerning the incident.

Defendant testified in his own behalf. He stated he knew the entire Hill family and, more specifically, that he had known Mrs. Hill since about the first of May, 1961, and had since been to the Hill home "quite a few times." He had given the Hill children money on several occasions. He had given Steven money several times, which gave rise to defendant's meeting Mrs. Hill because she wanted to know where Steven had been getting the money. Defendant gave money to

Steven for no reason other than he requested it. Prior to July 8, 1961, children visited with defendant in his room quite frequently. On the evening of July 8, about 6:00 or 6:30 p. m., defendant went to the Hill home wishing to see Mrs. Hill; he stayed about twenty minutes. Defendant testified at one point that he saw Vernon later that night about 8:00 p. m., at which time he asked Vernon if his mother was home and gave Vernon some money for ice cream. At another point he testified that he saw Vernon about 6:00 or 6:30 after he returned from the Hill home and it was at this time that he gave Vernon the money for ice cream. He then went to a nearby tavern and later saw Vernon again on his way home, about 8:00, 8:30 or 9:00, but no later than 9:00 p. m. At that time he told Vernon that he, defendant, would take Vernon home and explain to Mrs. Hill that they were together that evening to avoid Vernon's receiving a whipping for coming home so late, after Vernon expressed the fear of a whipping for coming home late. Defendant stated this was what he later told Mrs. Hill and also he gave her a dollar for the boy's fabricated services. Defendant further testified he was on the west side at a party at 10:30 or 11:00 p. m. on July 8th, and remained there all night. He denied ever having taken indecent liberties with Vernon Hill.

Estelle Black, defendant's landlady, testified that children frequently visited with defendant in his room; sometimes they would arrive as early as 7:00 a. m. She had seen defendant about 6:00 on the evening of July 8, 1961, just prior to his leaving the building. Mrs. Black went to sleep "real early" that evening and was awakened about 8:00 or 9:00 p. m. by the police when they came looking for defendant. She next saw defendant when he returned after the police left. Mrs. Black testified that at no time during the evening of July 8th, had she seen defendant in the house with a boy, that

she had never seen him in the house with a boy after 6:00 p. m., and that to her knowledge defendant had never been in the basement of the house with a child. Mrs. Black stated that in order to get into the basement of the building, a person must proceed through the apartment onto the back porch and then down the stairway; ingress into the basement cannot be attained from the outside of the building unless the person has a key because the outside basement door is always kept locked. The door to the basement itself, however, remains unlocked. Vernon Hill also testified that he and defendant proceeded through the apartment onto the back porch and then into the basement and that ingress into the basement could not be attained from the outside of the building because the outside door was locked.

At the close of the State's evidence and after a finding of not guilty on the charge involving Steven Hill, the trial judge stated that he would not strike the testimony given by Steven for the reason that it was admissible in the case involving Vernon for the purpose of showing the relationship of the parties.

■ Defendant first maintains that the testimony of Vernon Hill was not clear and convincing for the reason that it was contradictory and insufficient as a matter of law, that there was no substantial corroboration of his testimony, and that therefore his guilt was not proven beyond a reasonable doubt. We are of the opinion that the State made out a prima facie case showing defendant's guilt, but that prejudical error was committed by allowing into evidence the testimony of Vernon Hill and Mrs. Hill relating to the statement made by Vernon to his mother and grandmother concerning the incident with defendant and by allowing into evidence the testimony of Steven Hill as to the alleged incident of July 1, 1961.

485

It should be noted at the outset that the reason for defendant's characterizing Vernon Hill's testimony as contradictory and insufficient relates mainly to the testimony given on direct examination that he had not known defendant prior to July 8, 1961, and his testimony on cross-examination that he had known defendant prior to that date. When questioned by the court as to this matter, the witness explained that he had known of the defendant, but had no personal contact with him prior to July 8th. Further, this objection relates only to the credibility of the witness, which the trial judge found to be excellent, rather than to the sufficiency of his account of the incident with defendant. Vernon Hill's account of the incident itself and the events leading up to and immediately following the incident was unchanged on cross-examination. He gave a very detailed account of the premises where the incident occurred: the necessity of proceeding through the apartment in order to reach the basement stairway; the enclosed back porch; the unlocked inside basement door; the locked outside basement door; and so on. His testimony that he returned to his home with defendant after the incident about 11:00 p. m. was corroborated by his mother, Mrs. Hill. It is suggested that Vernon Hill fabricated this entire story in order to avoid a whipping for arriving home late. This is highly improbable in the light of his clear and detailed description of the incident and its attendant circumstances.

It is also argued by defendant that there was no substantial corroboration of Vernon Hill's testimony, such as is required in a case charging indecent liberties with a child where the defendant denies the charges. Defendant's own testimony was that he walked Vernon home that evening, attested to by Mrs. Hill; that he had, on prior occasions, given money to the Hill children, and especially to Steven Hill, for no

486

other reason than that Steven requested it; that on the night of July 8th, he gave Vernon money for ice cream and later gave Vernon's mother a dollar for the boy's alleged services; that he entertained children in his room, attested to by Mrs. Black. These facts admitted by the defendant certainly give rise to the inference that his interest in these children was other than platonic. See People v. Gambony, 402 Ill 74, 83 NE2d 321. In addition to the testimony of the defendant, Vernon's account of the premises where the incident occurred was corroborated by the testimony of the owner of the building, Mrs. Black, and especially as to the locked outside basement door, the unlocked inside basement door and the necessity of proceeding through the apartment in order to get to the unlocked basement door.

■ ■ While defendant's request for outright reversal must be rejected, in the interest of justice the conviction must be reversed and the cause remanded. Prejudicial error was committed by allowing into evidence testimony relating to the statement made by Vernon to his mother and grandmother concerning the incident with defendant. This was clearly not admissible as a complaint by an injured party for the reason that the rule regarding complaint applies only to rape cases and not to indecent liberties cases. People v. Romano, 306 Ill 502, 138 NE 169. Nor was it admissible as part of the res gestae, for the reason that it was not spontaneous and further was given in response to questioning by the grandmother. People v. Borella, 312 Ill 34, 143 NE 471.

■ It was also prejudical error to consider the testimony of Steven Hill in connection with the charge involving Vernon Hill. The trial court, first, found the testimony of Steven untrustworthy and insufficient to sustain a conviction for taking indecent liberties with him on July 1, 1961. More importantly, in cases of

487

indecent liberties, evidence of prior acts by the defendant with children other than the prosecuting witness is inadmissible as evidence of the specific act charged. People v. Rogers, 324 Ill 224, 154 NE 909.

■ While it is true, in a bench trial of a criminal case, the trial judge will be presumed to have considered only competent evidence in arriving at the judgment, People v. Robinson, 30 Ill2d 437, 197 NE2d 45, if it affirmatively appears that he considered incompetent evidence prejudicial to the defendant, the judgment will be reversed. People v. Grodkiewicz, 16 Ill2d 192, 157 NE2d 16. The record shows that the trial judge gave weight to the testimony of Steven Hill in his consideration of the charge involving Vernon Hill and further gave weight to the evidence relating to the statement made by Vernon to his mother and grandmother concerning the incident with defendant. Since we are unable to determine how much weight was given to this improper evidence, the conviction must be reversed and the cause remanded.

It is of interest to note at this point that the majority of Illinois Supreme Court decisions on the question of admissibility of evidence in a criminal bench trial hold that the trial judge is presumed to have considered only competent evidence in arriving at his judgment. This line of decisions begins with People v. Reed, 287 Ill 606, 122 NE 806, and continue down to date. Three cases exist, however, which have in no way been commented upon in any case in the Reed line and which hold directly contrary to the Reed line, namely, the trial judge in a bench trial of a criminal case is not accorded the same presumption which is accorded the chancellor in a chancery case that he will consider only competent evidence. See People v. Reichert, 352 Ill 358, 185 NE 585; People v. Arendarczyk, 367 Ill 534, 12 NE2d 2, and People v. Borrelli, 392 Ill 481, 64 NE 2d 719.

For these reasons the judgment is reversed and the cause remanded with directions to proceed in a manner not inconsistent with the views expressed.

Judgment reversed and cause remanded with directions.

BRYANT and LYONS, JJ., concur.