People of the State of Illinois, Plaintiff-Appellee, v. Henry P. Saravia, Defendant-Appellant.

Gen. No. 50,184.

First District, Fourth Division.

October 29, 1965.

Gerald W. Getty, Public Defender of Cook County, of Chicago (Frederick F. Cohn and James J. Doherty, Assistant Public Defenders, of counsel), for appellant.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Matthew J. Moran, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE DRUCKER delivered the opinion of the court.

Defendant, Henry P. Saravia, was convicted of robbery after a bench trial and sentenced to the penitentiary for not less than two nor more than four years. In this appeal defendant contends that he did not receive a fair trial because the court misunderstood the testimony and was not advised by the prosecution of the misunderstanding. Defendant further contends that the indictment was not in strict compliance with

the statutory requisites and therefore the court should have granted defendant's motion in arrest of judgment.

The complaining witness Andrew McNamara, a cab driver, testified that on February 26, 1964, at approximately 11:40 p. m., he went into a tavern on west 47th Street in Chicago to pick up a passenger; that the passenger followed him to the cab. He further testified:

> I got in the cab, I turned around and I asked him where he wanted to go. . . . When I turned around in my cab I saw him at that time, the light was on in the cab. . . . he made some kind of a noise, a laugh or something, and I turned around, he had a gun in his lap pointed at me. . . . He asked me how much money I had. I told him I only got about 12, 13 dollars. . . . He said, "Give it to me." . . . I reached down and gave him my bills. I knew I had 8 singles and a $5 bill. He said, "Give me the rest of the money." . . . I had four something in silver, almost $5. I reached down in my right hand pocket, I gave him that, but I left 70 cents about in the bottom of my pocket.

McNamara further stated that after driving the cab pursuant to the robber's directions they stopped under a street light; that he turned facing the robber at the latter's command; that the robber eventually left the cab at 55th Street and Halsted, walking south on Halsted; that he (McNamara) then drove away looking for a police car but finding none returned to the vicinity of 55th and Halsted and called the police. He continued:

> Two squads came, a Sergeant and Officer Walsh, and they had me in one of the squads. . . . I gave them the whole story and the description, what he

481

looked like and the clothes he was wearing and all, and I am talking to them and Officer Walsh was looking out the rear window of the squad.

I didn't see him, but he [Walsh] says, "Is that him?" From the description I gave them. I turned around and looked and I said, "That's him."

Upon cross-examination the witness testified as to the description of the robber which he had given to the police officers:

I told them that the man that held me up was around 35 years old, he weighed around 160 pounds and he was about 5-foot-9, and I told them that he had a dark jacket—it isn't a hunting jacket but one of them half length coats. It isn't below the knees. And he had a dark peaked hat and he had like my trousers here only gray work trousers. I also told them that the guy that held me up looked like the guy that was on the TV program called Empire. He looked like the manager of the ranch.

He also testified that defendant was arrested approximately 30 to 35 minutes from the time they first entered the cab.

Officer Walsh testified that defendant was arrested approximately 50 feet north of the intersection of 55th and Halsted; that defendant was brought to the squad car and was again identified by McNamara; and that defendant had in his pockets eight $1 bills and approximately $5 in silver.

Defendant testified that he had been drinking steadily for four or five hours before midnight on the evening of the robbery and that he left Roger's Tavern (actually, Rogers Shamrock Inn located on Halsted immediately south of 55th Street) approximately at

midnight; that he was in the tavern approximately an hour and that "I was getting a little drunk and he [the bartender] asked me to leave, so I left." Defendant further testified that the arresting officers informed him that the robbery was committed at 11:50 p. m.; that the officers "told me, its a funny thing, the robbery was committed about 10 minutes to 12:00 and you were arrested five after 12:00." Defendant states on page 5 of his brief that he was arrested at 12:10.

The bartender at the tavern, Joseph Rogers, testified for defendant. He stated that defendant left the tavern "about 12:00 or so and I had to tell this man he had to leave." Upon cross-examination Rogers testified that he was sure it was "just about 12:00 exactly . . . because I was looking for the bartender to come in at 1:00 o'clock [not 12:00 o'clock]"; that defendant's wife came to him in August, approximately six months after the robbery, and "asked me if I remember him being in there that night. At first I didn't remember who she was talking about until one of the fellows who was with him in there one night said to me—I call him Pete, that's how the guy told me who he was." Rogers could not further identify "Pete."

Defendant points out that when arrested he had neither a $5 bill nor a gun in his possession and contends that the lapse of time between the robbery and his arrest was so short as to preclude him from disposing of either. From this defendant argues that he was deprived of a fair trial since the court incorrectly understood from the testimony that he was arrested thirty minutes after the cab driver dropped off the robber (rather than thirty minutes after the robber first entered the cab) and the prosecution did not inform the court of its error. Though the court may have misinterpreted the testimony, its judgment was not based thereon. The judge said:

■■■■■■■■

Here is a case where the testimony of the cab driver is clear and convincing. Here is a fellow that had two or three opportunities to observe him. He described him as a dark complected individual he gives the Police a description of his clothing, a three-quarter length coat with a certain type of hat on, and while the officers are getting the description they say, is that the guy? He said, it looks like him. They bring him over and he identifies him on the spot. This is about 30 minutes after the robbery.

The bartender here, as far as the time is concerned, he knows him, he put him out at 12:00 o'clock, but as far as the bartender fixing the time he came in there, I am sure under all the other facts and circumstances he is mistaken about the time he came in there.

Now, you have an individual that even the Police say that this fellow here was under the influence of alcohol. He was put out of the place under the influence of alcohol. And he didn't seem to have any memory that night about what happened but he's got a good memory today.

■ ■ The credibility of the witnesses was properly resolved by the trial court. People v. Young, 24 Ill 2d 578, 182 NE2d 734. A positive identification by one credible witness is sufficient to support a conviction. People v. Soldat, 32 Ill2d 478, 207 NE2d 449.

■ ■ Moreover the time discrepancy, if any, was not such as to deprive the defendant of a fair trial. Since the robber left the cab at a location which was selected by him and with which he was evidently familiar, he had ample opportunity to dispose of the gun and part of the money whether he was arrested ten minutes or thirty minutes after the robbery. Significantly defendant, when arrested, had in his posses-

sion approximately $5 in change and eight $1 bills (the same amount in change and the same number of $1 bills taken in the robbery). Therefore, even if the court did misinterpret the testimony regarding the time interval as being thirty minutes instead of ten minutes or twenty minutes, the error was harmless. A court of review will not reverse a judgment on account of a harmless error. Adamaitis v. Hesser, 56 Ill App2d 349, 206 NE2d 311.

■ Defendant further contends that the indictment does not charge an offense in that it does not state the time and place of the offense as definitely as could be done, as is required by Illinois Revised Statutes (1963), c 38, § 111–3(a)(4). The indictment stated that the offense occurred in the County of Cook on February 27, 1964. It did not state the hour nor the street address of the offense. Contentions similar to that proffered here by defendant have been made and rejected in People v. Petropoulos, 59 Ill App2d 298, 208 NE2d 323, People v. Zeravich, 64 Ill App2d 150, 212 NE2d 282, and People v. Edwards, 62 Ill App2d 241, 210 NE2d 822. We hold those cases to be controlling here.

Upon a consideration of the record we find that the indictment was sufficient and that defendant received a fair trial. Therefore the judgment of the trial court is affirmed.

Affirmed.

McCORMICK, P. J. and ENGLISH, J., concur.