Wilburn Davis *v.* State of Arkansas

5196 411 S. W. 2d 531

Opinion delivered December 12, 1966

[Supplemental opinion on rehearing delivered February 27, 1967, 242 Ark. 43.]

*R. L. Wommack* and *Sam Montgomery,* for appellant.

*Bruce Bennett* Attorney General; *H. Clay Robinson,* Asst. Atty. General, for appellee.

Hugh M. Bland, Justice. The appellant was charged by information with the crime of false pretense [Ark. Stat. Ann. § 41-1901 (Repl. 1964)]. Omitting the formal parts, the information is as follows:

"The said Wilburn Davis and Robert E. Butler in said Washington County, State of Arkansas, on or about the 3rd day of March, 1965, did unlaw-

fully and feloniously obtain a check in the sum, of $1,000.00 for an insurance premium payment from Mrs. H. Scott-Tucker by falsely, fraudulently, feloniously and designedly stating to Mrs. H. Scott-Tucker that they were authorized and licensed agents for the Southern Union Life Insurance Company of Little Rock, Arkansas, and that an insurance policy would be issued to her by the Southern Union Life Insurance Company of Little Rock, Arkansas; that the said Wilburn Davis and Robert E. Butler then and there well knowing that their statements were false and were made with a felonious and fraudulent intent to cheat and defraud the said Mrs. H. Scott-Tucker out of the said $1,000.00, and that the said Mrs. H. Scott-Tucker relied upon, believed and acted upon said false representations aforesaid, and she was then and there fraudulently and feloniously deprived of her said property by the said Wilburn Davis and Robert E. Butler, which property was in the value of $1,000.00.''

The cause came on for trial on the 27th day of October, 1965. The codefendant, Robert Butler, was not tried but testified as a state's witness. Appellant was found guilty and his punishment was fixed at three years in prison.

Following his conviction, appellant filed a motion for An Arrest of Judgment and subsequently a motion for a new trial. Both motions were overruled and this appeal followed.

Appellant claimed that he was appointed as a field representative of Williams Insurance Agency who had a general agent's contract with the Southern Union Life Insurance Company to sell hospitalization insurance. On or about the 3rd of March, 1965, appellant and Butler went to the home of Mrs. Scott-Tucker near Lincoln, Arkansas. Butler gave his brief case containing brochures, applications, receipts and other in-

surance information to Davis and remained in the car while Davis went into the home of Mrs. Scott-Tucker. Appellant represented to Mrs. Scott-Tucker that he was representing Southern Union Life Insurance Company, obtained from her her policy and he copied certain information from the policy onto an application for insurance. He represented himself to her as being Bill Williams and advised her that Southern Union Life Insurance Company was building a huge rest home at Fayetteville, Arkansas and as soon as they got the rest of the money the building would begin. He further represented to Mrs. Scott-Tucker that it would take a thousand dollars for the premium and that she would receive services in the rest home for the rest of her life. Mrs. Scott-Tucker gave him her check book and he wrote out a check in the sum of $1,000.00 payable to Southern Union Life Insurance Agency which was endorsed and cashed by Butler. $250.00 of this money was given to Bill Williams as the net to the company. The commission, being 75 per-cent or $750.00, was divided between appellant and Butler. After Mrs. Scott-Tucker demanded that her money be returned, a Mr. Ludlow returned $250.00 and then another $100.00 was returned to her through Mr. Ted Coxsey. The balance of the $1,000.00 has not been returned.

For reversal the appellant sets out seven separate points with three subsections under the first point. We believe that we can summarize the contentions of the appellant without unduly lengthening this opinion. His main contentions, and the only ones that are briefed, are that the information is insufficient to support the charge of false pretense; there is a material variance between the allegation in the information and the state's proof; there is no substantial evidence of intent to defraud; the court erred in overruling motion for arrest of judgment; the court committed prejudicial error by its comments to appellant's counsel and to the witness, J. C. Kelly; that the court erred in permitting evidence of other fraud committed by the

appellant; and the court erred in refusing appellant's requested instructions No. 4 and No. 8. We will not attempt to discuss these under each separate head.

SUFFICIENCY OF INFORMATION. The only effort on behalf of appellant to challenge the information in this case was by a motion for arrest of judgment filed after conviction. The Arkansas Statute establishing the crime of false pretense [§ 41-1901] does not apply to a false statement concerning a future event. *Conner* v. *State,* 137 Ark. 123, 206 S. W. 747 (1918). The information contains one factual allegation of a promise to perform an act in the future, *i. e.,* the allegation that the appellant promised that the insurance company would issue an insurance policy but the basic false statement allegation in the information is that the appellant pretended to be an insurance agent of the Southern Union Life Insurance Company of Little Rock, Arkansas when in fact he was not. That statement is of a present fact and not a future event and, consequently, constitutes the crime of false pretense. The Supreme Court of Kansas had this situation before them in *State* v. *Handke,* 340 P. 2d 877 (Kan. 1959). In that case the defendant was in the house-building business and represented to the Pankeys that he was building certain houses at that time and that he would take their money ($3,000.00) and purchase materials with which to build them a house as soon as he could get the material together. The information so charged. The court held that even though the defendant may have made false representations as to future promises or events, he would not be relieved if he also made false representations as to existing or past acts. Representations as to future events may be considered along with existing or past facts and it is not necessary to prove that all representations alleged were actually made or that they were all false.

In *State* v. *Smith,* 324 S. W. 2d 702 (Mo. 1959) the substance of the false representations charged in the indictment was that the defendant represented to Mrs.

Smith that the electrical wires and system of her house were defective and that her house was in danger of burning down unless she did something about it and that he had attached a list of materials in performance of work he did. The court stated that the rule is that where an information charges several false pretenses, evidence of one false pretense constituted in law an offense and will support a conviction. "There need be only one false pretense, and though several such pretenses are set out in an indictment, yet if any one of them is proved, being such as truly amount in law to a false pretense, the indictment is sustained."

The trial court specifically instructed the jury that false statements, to constitute the crime of false pretense, are required to be of past or existing facts and not future facts or events. [Instructions 4, 5 and 6.] We see no merit in appellant's contention that the information is insufficient.

MATERIAL VARIANCE IN PROOF AND INFORMATION. A fatal variance is a failure to prove material allegations contained in the information. In other words, it is a failure of proof. *Clemons* v. *State,* 150 Ark. 425, 234 S. W. 475 (1921). In this case there is no substantial variance in the proof and the information. The allegation that the insurance company would construct a rest home would not properly charge a false pretense because it concerned a future event. In *Kerby* v. *State,* 233 Ark. 8, 342 S. W. 2d 412 (1961) the appellant maintained that his conviction should be reversed because the court had permitted the prosecution to present testimony concerning misrepresentations of future events. The court ruled:

"The appellant's second contention is that the court erred in permitting the prosecution to prove Kerby's misrepresentations about matters relating solely to the future, such as the statement that the stock would increase in value within a year. It is conceded that the record contains sufficient evidence of

misstatements of existing facts to support a conviction, but the appellant insists that the references to future events should have been excluded altogether.

This contention is not sound. It is true that misrepresentations relating solely to the future do not constitute an offense. *Conner* v. *State,* 137 Ark. 123, 206 S. W. 747. It does not follow, however, that such proof must be excluded from the jury's consideration if it is otherwise relevant. Here the testimony was relevant, as it assisted the jury in understanding all the circumstances surrounding the sale of the stock. As we said in *Baker* v. *State,* 4 Ark. 56: 'All the authorities concur, that the intention and design of the party are best explained by a complete view of every part of his conduct at the time, and not merely from the proof of a single and isolated act, or declaration.' In its charge to the jury the court adequately protected Kerby's rights by an instruction which explained that the false representations 'must be representations of the existence of some fact or facts.' ''

So, we see no merit in this contention.

We see no merit in appellant's contention that there is no substantial evidence of intent to defraud. This is a matter for the jury to consider under proper instruction. Even if the entire sum of money had been returned, it would only be a factor in the determination of whether or not there was an intent to defraud at the time he received the money from Mrs. Scott-Tucker. There is ample testimony in the record that the appellant made the false statement that he was an agent of the insurance company and would have an insurance policy containing rest home benefits issued to Mrs. Scott-Tucker, all of which was introduced. There is substantial evidence to support the conviction. Certainly Mrs. Scott-Tucker would not have delivered $1,000.00 to the appellant for an insurance policy if he had not stated that he was an authorized agent of the company that was going to issue the policy.

We see no merit in appellant's contention that the court committed prejudicial error by its comments to appellant's counsel and to the witness, Kelly. In *Tuttle* v. *State,* 83 Ark. 379, 104 S. W. 135, the court said to counsel:

> "You can reduce them to writing hereafter and not take up the time of the court. Your exceptions are noted. This is not a backwoods justice-of-the-peace court, and I will not take up the time of the court with such questions."

In this case it developed that Mr. Sam Montgomery, an attorney for the appellant, had talked to Mrs. Scott-Tucker during the noon recess and on cross-examination was asking her about the conversation and the court said:

> "I don't know what you were doing talking to the State's witness, during the noon hour. Did you have Mr. Coxsey's permission— .* * * You are supposed to ask the other side's permission. You should tell the other side if you are going to talk to their witnesses.
>
> MR. MONTGOMERY: I presumed he saw me there and I didn't know there was any rules.
>
> THE COURT: I don't know anything about this procedure, but that is the customary procedure in this area. If you are going to talk to their witnesses and they don't object, why, you can go ahead."

While interrogating the witness Kelly he was asked what he knew about the transaction and his answer was: "If I can ever get a chance to talk, yes."

> "THE COURT: Now, young man, I'm running this Court and don't you ever say that again. The Court will make the rulings and you will abide by them.

Don't you pop off about my rulings, do you hear me, sir?"

We do not think these remarks by the court were prejudicial or affected the verdict of the jury in any way. In *Tuttle* v. *State, supra,* the court said:

"There is a reciprocal duty between court and counsel to treat each other with fairness, courtesy and consideration. And this duty is not less upon the court than it is upon counsel."

The colloquy between the court and counsel and the witness, Kelly, is not in accord with orderly trial procedures, but we do not believe it was prejudicial. We are convinced that the verdict of the jury was responsive to the evidence and was uninfluenced by any remarks of the court.

The appellant complains of the instructions of the court. We have carefully examined these instructions and find no error. The instructions fairly state the law and in our opinion are more favorable to the appellant than to the state.

Finding no error, the judgment of the circuit court is affirmed.

[Supplemental opinion on rehearing delivered February 27, 1967, 242 Ark. 43.]