**People of the State of Illinois, Plaintiff-Appellee, v. Eugene Miller, Defendant-Appellant.**

**Gen. No. 51,122.**

First District, Second Division.

April 11, 1967.

Rehearing denied May 23, 1967.

Bellows, Bellows & Magidson, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and James S. Veldman, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURKE delivered the opinion of the court.

Eugene Miller was indicted and tried with William Babitsch for the crime of abortion. Both men were found guilty and sentenced to five to ten years in the penitentiary. Eugene Miller appeals. William Babitsch prosecutes a separate appeal.

Defendant raises several grounds for reversal: that the trial court allowed improper and prejudicial testimony by the arresting police officer to be heard by the jury; that the trial court erred in failing to suppress evidence illegally seized by the arresting police officer after defendant's arrest; that the prosecuting attorney engaged in prejudicial final argument; that defendant made a statement to the police without first having been warned of his right to counsel and of his right to remain silent; and that the evidence was not sufficient to prove defendant guilty beyond a reasonable doubt.

The complaining witness, Elaine Grossman, lived in an apartment in Chicago which she shared with a roommate, Violet Kay Watkins, Eugene Miller's girl friend. In September of 1964, Miss Grossman was fearful that she had become pregnant and Miller, a chiropractor, was consulted. Miller performed a series of tests upon her

which confirmed the pregnancy. Miss Grossman testified that she at first attempted to terminate the pregnancy by the use of laxatives and pills provided by her boyfriend. Miller thereafter advised Miss Grossman to have the baby, but later informed her that he knew two doctors who would perform an abortion. He stated that he could procure the services of the better of the two doctors for the operation and that the fee would be $400, which amount was thereafter paid to Miller by Miss Grossman and Miss Watkins.

In October Miss Grossman received a telephone call from a Dr. Williams and a tentative date for the abortion was set for October 17th. The doctor failed to keep the appointment on the 17th and again contacted Miss Grossman and a date was set for the 21st. On that date Dr. Williams, later identified by Miss Grossman as defendant William Babitsch and who, like Miller, was a chiropractor, came to the Grossman apartment and performed an abortion upon Miss Grossman. Miss Grossman testified that Babitsch inserted a number of surgical instruments which he brought with him into her vagina and, after he had finished, inserted a long flexible tube into the vagina and left the apartment, calling later to inquire about her condition. Both Miller and Babitsch visited the apartment the following evening. Miss Grossman received a series of shots "to speed things up." During the night of October 22nd, Miss Grossman went to the washroom where she discharged a fetus. She preserved the fetus in alcohol as Babitsch directed and later turned it over to him.

Miss Grossman thereafter began to suffer bleeding from the vaginal area and on November 19, 1964, she consulted a physician and was admitted to the Edgewater Hospital. She remained in the hospital for a period of ten days during which time she underwent an operation to remove one of her ovaries and to repair a tear in the uterine wall.

Miss Violet Kay Watkins testified that, at the time he was consulted, Miller stated he knew two doctors who would perform an abortion, that Dr. Williams was the more proficient of the two and that the fee would be in the vicinity of $600, which he later reduced to $400. After the abortion Miss Watkins testified that she witnessed a tube protruding from the vagina of Miss Grossman and that the latter complained of pain and stated that she was dying and that she wished she would die. The witness further stated Miss Grossman discharged a fetus which Miss Grossman preserved and later gave to William Babitsch.

Eugene Miller was arrested by Detective Frank Collurafici at Miller's place of residence, a private home where he resided while caring for a bedridden invalid person. The home was owned by the invalid's mother, Mrs. Johnson, who also resided there. At the time of the defendant's arrest the officer received permission from Mrs. Johnson to search the house and found the medical instruments which were later admitted into evidence at the trial. Mrs. Johnson further gave the officer permission to search automobiles in the garage. A Volkswagen, bearing license plates registered in the name of Mrs. Johnson, was searched and a black medical bag containing surgical instruments capable of use in an abortion was discovered. Although the Volkswagen was owned by Miller, the officer testified that at the time of the search he believed the automobile belonged to Mrs. Johnson since a prior investigation revealed that the license plates were registered in the name of Mrs. Johnson. The officer further stated that at the time of the arrest Miller told him that Babitsch had performed the abortion upon Miss Grossman; that he and Babitsch had split the $400 fee received therefrom; that he, Miller, performed six other abortions himself; and that the surgical instruments found in his Volkswagen were used in that line of work. A pretrial motion to suppress the

instruments as evidence was denied and they were admitted into evidence. At the end of the officer's testimony regarding his conversations with defendant Miller, all testimony relating to William Babitsch was stricken by the court and the jury instructed to disregard it.

Eugene Miller offered no evidence in his own behalf.

Defendant first maintains that the trial court allowed prejudicial testimony by the arresting officer to be heard by the jury. The testimony complained of related to the fact that the officer was assigned to a robbery detail investigating Eugene Miller at the time the officer arrested him on the abortion charge. He also maintains it was error to permit the officer to testify that defendant told him he had performed six other abortions. The record shows defendant was in no way prejudiced in this regard.

■ Officer Collurafici scrupulously tried to avoid any reference to the fact that he was investigating Miller on a robbery charge after initial objections by defense counsel in this regard were sustained by the trial court and the jury instructed to disregard the references thereto. The officer continued to testify a short while and the trial court finally instructed the jury to disregard his entire testimony. It should be noted that no specific incident was referred to by the officer. Furthermore, the references to the "robbery detail" to which the officer had been assigned were merely collateral to the main line of the officer's testimony. The colloquy between the court and counsel after the references were made, outside the presence of the jury, clearly indicates that the trial court was concerned that the officer's testimony might leave the jury with the impression that defendant was involved in robberies. He was, however, of the opinion that the officer's testimony had no adverse effect upon the jury, but he nevertheless instructed the jury to disregard the testimony. The record discloses that this matter was not deliberately brought out by the

State, that the witness tried to avoid references to the matter and the trial judge acted promptly to cure the harm, if any, which might have arisen therefrom. See People v. Naujokas, 25 Ill2d 32, 182 NE2d 700.

█ Defendant's conversation with the officer, that he had engaged in six other abortions, constituted an admission by the defendant. The officer's testimony was not a conclusion, as defendant maintains; the officer was repeating what defendant had told him and was not rendering an opinion based upon what he heard or observed, as was the situation in the case of People v. Rongetti, 338 Ill 56, 170 NE 14, cited by defendant in support of this position. Furthermore, defendant requested no instruction limiting the effect of this evidence, nor the use to which it could be employed by the jury.

█ The search of defendant's automobile in the garage and the seizure of the medical and surgical instruments therefrom were reasonable under the circumstances. After Officer Collurafici searched the house, he received permission from the owner and possessor of the premises to search the automobiles in the garage. Having investigated the license plate registration of the Volkswagen some two weeks prior to this time, the officer found that the plates were registered in the name of Mrs. Johnson. Although the Volkswagen was in fact owned by Miller, the officer testified that at the time of the search he thought the automobile belonged to Mrs. Johnson. Under the circumstances we feel that it was reasonable that the officer believed the Volkswagen belonged to Mrs. Johnson and that he acted reasonably in searching the Volkswagen and seizing the black medical bag and its contents.

█ With regard to the admission into evidence of the medical instruments, the fact that they may not have been the same instruments used in the abortion of Miss Grossman is not controlling. The testimony showed that

the abortion had been performed by William Babitsch. There was evidence that Eugene Miller was a coconspirator and accessory both before and after the operation by Babitsch. In our opinion the admission of the instruments, without proof that they were the same instruments used on Elaine Grossman was relevant and proper. See People v. Magby, 37 Ill2d 197, 226 NE2d 33.

■ Defendant next contends that the testimony of Miss Watkins, to the effect that Miss Grossman complained of pain and stated she was dying after the operation, was prejudicial and inadmissible. We disagree. The statements were made by Miss Grossman very soon after the operation was performed and served to corroborate the fact that an abortion had been performed. It clearly does not appear from the record that this testimony was used to arouse the passion of the jury. The statements of Miss Grossman testified to by Miss Watkins are somewhat akin to the complaint of a rape victim as corroborating the fact of the crime. Furthermore, the testimony was not objected to at the time it was offered.

■ The contention that the prosecuting attorney engaged in prejudicial final argument by referring to the black medical bag and its contents, by stating that Miller was an abortionist, and the like, is without merit. It does not appear that trial counsel transcended the legitimate bounds of proper final argument to the jury. People v. Lloyd, 304 Ill 23, 99, 136 NE 505.

Although defendant raises the argument that he was denied his constitutional rights in that he was not informed of his right to remain silent and of his right to counsel before making statements to the arresting officer, it does not appear that this case presents the proper circumstances under which such a claim may be advanced; Miranda v. Arizona, 384 US 436, is not controlling. See Johnson v. New Jersey, 384 US 719. It further appears that this point was not raised at trial.

█ Defendant also maintains that the sentence of five to ten years in the penitentiary was excessive, in view of the fact that he was a chiropractor and the fact that he did not perform the abortion upon Miss Grossman. The sentence is within the limits prescribed by the statute and although this Court has the authority to reduce sentences in appropriate cases, nothing in this record warrants such a reduction. Ill Rev Stats 1965, c 38, Pars 23–1(a), 121–9(b)(4). It also does not appear that, as defendant maintains, the trial judge based the sentence upon any improper evidence. People v. Smith, 55 Ill App2d 480, 204 NE2d 577.

Defendant's final contention is that he was not proven guilty beyond a reasonable doubt. The record in this regard shows this position to be untenable; the State's evidence amply supports the jury's verdict of guilty.

The judgment is affirmed.

Judgment affirmed.

LYONS, P. J. and BRYANT, J., concur.