**People of the State of Illinois, Plaintiff-Appellee, v. James Smith, Defendant-Appellant.**

Gen. No. 51,581.

First District, Fourth Division.

December 21, 1967.

John J. Cleary, of Chicago, for appellant.

John J. Stamos, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Richard A. Rinella, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE McCORMICK delivered the opinion of the court.

James Smith, the defendant, was indicted by the Cook County Grand Jury on July 8, 1961, charged with having committed "the infamous crime against nature upon and with one Vernon Hill, a male person." In the same indictment the defendant was charged with taking indecent liberties with Vernon Hill, and unlawfully tending to make the said Vernon Hill (a male child under the age of 17 years) a delinquent child.

The case against the defendant was first tried before a judge without a jury, at which trial the defendant was found guilty and sentenced to 5 to 15 years in the penitentiary. The defendant took an appeal from that sentence and this court reversed and remanded the case for a new trial. (People v. Smith, 55 Ill App2d 480, 204 NE2d 577.)

A second trial was held before a jury in July 1965. After the case had been presented to the jury the prosecution moved to nolle prosequi the charges of a crime against nature and contributing to the delinquency of a minor. The jury found the defendant guilty of indecent liberties with a child and the court sentenced the defendant to 15 to 20 years' confinement. From that judgment and sentence this appeal is taken.

In this court the defendant urges:

1)   The introduction of the evidence of flight and the instruction on flight constitute reversible error;

2)   The introduction of the three previous convictions for crimes against nature was error;

3)   The evidence supporting the conviction of the defendant rests on the testimony of a child of 10 years, and this testimony is not clear and convincing and is not otherwise substantially corroborated;

4) The prosecutor's comments upon the defendant's failure to produce certain defense witnesses was reversible error;

5) The prosecution's questions of defense counsel implying that defense counsel, prior to interviewing the State's witnesses, should have advised them that they had the right to have an attorney present, and should have called the State's Attorney's office first;

6) The defense counsel was unduly restricted in his cross-examination of the State's witnesses.

At the time of the trial Vernon Hill was 14 years of age, and attended grade 8–A of Vaughn Public Elementary School in Chicago. He testified that on the evening of July 8, 1961, at about 9:30, he met the defendant on the street; that the defendant had been to his home twice, once in June, and again on July 4, when he had taken pictures at a barbecue party. He stated that on the evening of July 8, the defendant asked him to come with him and clean his room; that he got a wastebasket near the front door, then followed the defendant to the basement, where he was forced to commit an indecent act on the defendant's person, the details of which it is not necessary to relate here. The witness testified that the defendant said he would kill him if he told anyone what had occurred, then held him by the wrist and walked him home. He was unable to tell at what time he arrived home, but stated that his grandmother was in the hall, and followed him upstairs.

Ruby Hill, Vernon's mother, testified that she had seen the defendant twice before; once in June, and again on July 4, when he took pictures of her children at a barbecue in the yard. She testified as follows: On the night of July 8, 1961, she had been out for about two hours looking for her son Vernon. When she returned

home about 11:00 p. m., she saw the defendant standing in front of her building, and he told her that Vernon had been with him, cleaning his room. After the witness complained to the defendant that he should not have kept Vernon out so late he gave her $1 for Vernon and told her it was for some work Vernon had done for him. While they were standing there Earl Stamply, a friend of Ruby Hill's, shouted from a second-floor window to hold the defendant and not let him get away, because he had done something to Vernon. The defendant then ran down the street. Mrs. Hill said she did not see him again that night. The court overruled an objection made to the testimony of Ruby Hill with reference to the shouted statement from the window and the flight of the defendant.

Ruby Hill further testified that she called the police and gave them a statement when they arrived; that about 11:20 p. m. they went to the defendant's apartment, but he was not there; that about 2:00 a. m. the next day the witness and her mother were looking out the window of their apartment and saw the defendant across the street; that someone yelled out the window and the defendant ran through a building.

Alberta Graham, Vernon's grandmother, testified that on July 8, 1961, she saw the defendant and Vernon walking toward her home; that it was after 10:00 p. m., and the defendant asked her not to whip the boy. She stated that when she went into the apartment she saw Vernon wiping his mouth and crying; that Earl Stamply then shouted out the window as Ruby Hill had previously testified. Again her testimony with reference to that matter was objected to and the objection was overruled.

Estelle Black testified on behalf of the defendant that he roomed at her house and that she had talked to him about 6:00 p. m. on July 8, 1961; that she went to bed at approximately 9:00 p. m., and did not see either the defendant or Vernon come in through the front door.

314

The defendant testified that on July 8, at about 6:00 p. m. he saw Vernon near an ice cream store in the vicinity of defendant's home; that he gave Vernon a quarter, then went home and cleaned up, talked with the landlady and went on to a tavern where he stayed for an hour. He stated that when he left the tavern at about 8:30 he again met Vernon, who told him he was afraid to go home because he would get a whipping from his mother, and the defendant took the boy home where they met the complaining witness' mother, Ruby Hill, and two cousins. He stated that he did not take Vernon home with him, nor did he take any indecent liberties with the child.

On cross-examination the defendant stated that he had dated Ruby Hill on numerous occasions. He further testified that later in the evening of July 8, he had gone to the home of a friend—one Betty Trisdale—about 11:00 p. m.; that she was a Chicago resident and that he knew where she lived, but that she was not present in court. He denied that he had run from Ruby Hill's home as the State's witnesses had testified. Ruby Hill was called as a rebuttal witness for the prosecution. She stated that she had seen the defendant only twice prior to July 8.

Over objection of defense counsel, before verdict and in the presence of the jury, the court admitted into evidence records of previous convictions of the defendant, exhibits 4, 5 and 6. The records were read to the jury by the Assistant State's Attorney; in 1939 he was sentenced to the Illinois State Penitentiary for a term of one to ten years on a charge of crime against nature; in 1952 he was sentenced to the Illinois State Penitentiary for a term of five to ten years concurrent on two charges—conviction of crime against nature—and was discharged in April 1959.

The State's Attorney also read to the jury that the records of the Circuit Court of Pulaski County show that James Smith was indicted for the offense of crime

against nature and was found guilty as charged on August 8, 1939.

The jury were instructed that the evidence of prior convictions of defendant Smith were introduced only for the purpose of determining the credibility or weight which they should attach to his testimony; that the convictions should not be considered by the jury as evidence that the defendant had committed the offense for which he was now charged. The jury returned a verdict of guilty. The State then made the following statement to the court:

"... in aggravation the State would point out the defendant is now 51 years of age; that in 1935 he was sentenced to the Illinois State Farm on the charge of petty larceny for a term of six months; that in 1939 he was sentenced to the Illinois State Penitentiary on a charge of crime against nature for a term of one to ten years; that in 1950, ... he was sentenced to the House of Correction for one year on a charge of contributing to the delinquency of a child; that in 1952 he was sentenced to the Illinois State Penitentiary for a term of five to ten years concurrent on two charges, convictions of crime against nature. Discharged in April of 1959."

The State further pointed out that on October 27, 1961, after a conviction on a trial without a jury on the same indictment in which he was now being tried, the defendant was found guilty and sentenced to a minimum of five and a maximum of fifteen years in the Illinois State Penitentiary. After some discussion as to allowing the defendant credit for the time served while the case was on appeal, the court, according to the common-law record, sentenced the defendant to fifteen to twenty years in the Illinois State Penitentiary. The court made some statement afterwards that the defendant was really being sentenced for a term of nineteen to twenty years

in the penitentiary; however, the common-law record shows that he was actually sentenced only for a term of fifteen to twenty years. This appeal is taken from that judgment and sentence.

The first objection urged before us is that the instruction concerning the flight of the defendant and the admission of evidence of his flight were reversible error. It is in evidence that the defendant, while standing in front of the home of the complaining witness, upon hearing Stamply's shout from the window, hastily left the locality. Again, there is evidence in the record that subsequently, on the same evening, when the defendant heard a shout from a window he ran into and through a building. Counsel for the defendant in this court apparently contends that the conduct of the defendant was not "flight" in the sense that it has been used in the cases. In People v. Herbert, 361 Ill 64, 196 NE 821, cited by the defendant in support of his contention, "flight" is defined as follows, at page 73:

> "Flight, in criminal law, is defined as 'the evading of the course of justice by voluntarily withdrawing oneself in order to avoid arrest or detention, or the institution or continuance of criminal proceedings. The term signifies, in legal parlance, not merely a leaving, but a leaving or concealment under a consciousness of guilt and for the purpose of evading arrest. Such consciousness and purpose is that which gives to the act of leaving its real incriminating character.' "

■ ■ In the instant case the evidence of the voluntary withdrawal of the defendant in the two instances was properly presented to the jury and was a fact from which they could draw the conclusion that the defendant had fled. The instruction as to flight given by the State was a proper one, under the circumstances in the case. Under the Illinois law flight is a circumstance which may be

considered with all the other evidence in the case as tending to prove the guilt of the defendant. There was no error either in introducing the evidence or in giving the instruction.

■ The defendant also argues that the introduction of the three previous convictions for crimes against nature was error. The three previous convictions which were properly certified to were introduced in evidence. The rule in Illinois is that if the defendant takes the stand he may be impeached by showing prior convictions of infamous crimes. First, the defendant argues that that rule should be changed. As far as this case is concerned, the rule exists and we are bound by it.

The defendant also raises the point that the exhibits should not have been introduced. In the statement of facts in defendant's brief it is said: "Over objection of defense counsel, the court admitted into evidence, evidence of three previous convictions involving the crime against nature . . ." In this court the defendant argues that the impeachment of a defendant by a prior conviction of an infamous crime can be proved only by the introduction of the record of the conviction or an authenticated copy thereof. He further argues that the prosecution's exhibits 4, 5 and 6 covering the convictions of the defendant were, over the objections of the defense counsel, received in evidence and read to the jury; and he argues that the reading of the records by the prosecutor is not an adequate substitute for the records. The records themselves do not appear in the abstract, nor in the record in this court.

No objection as to the proper identification of the records was made at the trial by counsel for defendant. Apparently, from the statements made by the Assistant State's Attorney at the time the records were read, and the fact that the court had admitted them, the records were in proper form. In fact, in his brief in this court

the defendant states that the prosecution's exhibits 4, 5 and 6 were, over objections, received and read to the jury. In People v. Smith, 63 Ill App2d 369, 211 NE2d 456, the court said at page 381: "In the instant case, the record of the conviction was introduced by the reading therefrom by the keeper of such records—the Clerk of the Court. This is no less proper than the introduction of the physical record itself into evidence as an exhibit." However, in the instant case, the records were physically introduced.

The defendant further argues that under the statute in force at the time of the trial [1] convictions for crimes against nature were no longer considered infamous. Under the old code, section 141, the term "crimes against nature" was used, and such crimes were held to be infamous. Such offenses have been combined in Indecent Liberties with a Child, section 11–4.[2] In the Committee

---

[1] Ill Rev Stats 1965, c 38, § 124–1. Definition.] "Infamous crimes" are the offenses of . . . deviate sexual assault, . . . indecent liberties with a child, . . . if the punishment imposed is imprisonment in the penitentiary.

[2] Ill Rev Stats 1965, c 38, § 11–4(a). Indecent Liberties with a Child.] (a) Any person of the age of 17 years and upwards who performs or submits to any of the following acts with a child under the age of 16 commits indecent liberties with a child: (1) Any act of sexual intercourse; or (2) Any act of deviate sexual conduct; or (3) Any lewd fondling or touching of either the child or the person done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the person or both.

DEFINITIONS:

Ill Rev Stats 1965, c 38, § 11–2. "Deviate sexual conduct," for the purpose of this Article, means any act of sexual gratification involving the sex organs of one person and the mouth or anus of another.

Ill Rev Stats 1965, c 38, § 11–3. Deviate Sexual Assault.] (a) Any person of the age of 14 years and upwards who, by force or threat of force, compels any other person to perform or submit to any act of deviate sexual conduct commits deviate sexual assault.

319

Comments on the new sections (SHA c 38, § 11–4) it is stated that the section replaces and modifies the law formerly in chapter 38, § 141 (crime against nature), and that subsection (a) (2) incorporates into Indecent Liberties the crime against nature formerly covered by section 141. Section 587 (Ill Rev Stats 1959, c 38, § 587) included crime against nature as an infamous crime. In the new section 124–1 the crime of Indecent Liberties with a Child and the Crime of Deviate Sexual Assault are listed as infamous crimes and are punishable by imprisonment in the penitentiary.

Defense counsel also argues that the one conviction of August 8, 1939, was too remote to affect the credibility of a witness. In People v. Buford, 396 Ill 158, 71 NE2d 340, it is held that such a contention cannot be sustained. The records were properly brought before the jury.

On cross-examination the defendant was asked if the girl friend with whom, according to his testimony, he had spent the evening of July 8, was still a Chicago resident, and if the defendant knew where she lived at the time of the trial. He answered that he did know where she lived. The State's Attorney then asked if she was in the courtroom that day and the defendant said she was not. The defense counsel then pointed out that a subpoena had been issued for her but was returned not served. Later in his argument the State's Attorney commented on the fact that the defendant had not produced any witnesses to substantiate his presence in the home of the girl friend on the date of the incident.

In People v. Gray, 52 Ill App2d 177, 190, 201 NE2d 756, the court said:

"Where the defendant injects into the case his activities with potential witnesses during a particular period of time ostensibly for the purpose of establishing an alibi for the time of the commission

320

of the crime charged, his failure to produce such witnesses is a proper subject of comment on the part of the State. [Citing cases.]"

During the trial of the case defense counsel took the stand as a witness for the defendant. He testified that on June 29, 1965, he had gone to the home of Vernon Hill in order to take a statement from him; that he had asked Vernon about a discussion which took place between him and the defendant when they first met in front of the candy store, and as to the conversation in the basement at the time of the alleged assault. He testified that Vernon said he had met the defendant at 9:30 in the evening and that the defendant had made a proposition to him in the basement to perform an indecent act in return for a payment of $10.

■ ■ The State's Attorney then raised the point on cross-examination as to whether or not the defense counsel had told the people they had a right to have an attorney present at the time of the conversation, and whether he had called the State's Attorney's office informing them that he was going to interview the State's witnesses. The defendant answered, over objection, that he had not. Defense counsel makes the point that these questions should not have been asked. While we have been cited no Illinois case, we feel that counsel for defendant was within his rights. In the Canons of Professional Ethics of The Illinois State Bar Association and The Chicago Bar Association, in section 39 we find the statement: "A lawyer may properly interview any witness or prospective witness for the opposing side in any civil or criminal action without the consent of opposing counsel or party." In Davis v. State, 241 Ark 646, 411 SW2d 531, cited by appellant, the comments made about defense counsel's interviewing of State's witnesses was made by the trial judge, not the prosecuting attorney. We do not understand why the State raised any point at

all in the instant case about the testimony of defense counsel, since it would seem that the testimony was in favor of the prosecution; however, it is not reversible error, and this court will not reverse a judgment because of harmless error. People v. Saravia, 64 Ill App2d 479, 211 NE2d 560.

■ The point is made by the defendant that his cross-examination of witnesses was unduly restricted. The record does not support this contention. The only argument made by defendant on this point in his brief in this court is that he objects to the fact that defense counsel was not able to inquire as to certain disgusting details of the insertion of the defendant's penis in the mouth of the prosecuting witness, and also that he was prevented from going into details with reference to the prosecuting witness' progress in school. The court ruled properly in both instances.

The defendant objects that the jury was not properly instructed. A careful examination of the instructions given and refused does not support that contention. The jury was properly instructed.

■ In the previous trial of the case (People v. Smith, 55 Ill App2d 480, 204 NE2d 577), where the evidence was substantially the same as in the case before us, the defendant argued as he does here that the testimony of Vernon Hill was not clear and convincing and that there was no substantial corroboration of his testimony, and that therefore, defendant's guilt was not proved beyond a reasonable doubt. The court said, at page 485: "We are of the opinion that the State made out a prima facie case showing defendant's guilt, . . ." We also think that there was substantial corroboration of the testimony of Vernon Hill; that the defendant received a fair trial, and that defendant was proved guilty beyond a reasonable doubt. We will adopt the statement made by the Illinois

Supreme Court in People v. Gambony, 402 Ill 74, 83 NE2d 321, at page 83:

"It is almost impossible in the trial of a lawsuit to prevent some improper statements getting to the jury, . . . This court has held that where the jury could not, under the record, have reached a different verdict had no such errors intervened, errors on the trial do not always justify a reversal. The verdict of a jury will not be set aside on such grounds unless from the record it can be seen that another verdict might have been reached had no such errors intervened. People v. Baker, 365 Ill 328."

While there were some errors in the record, none of them would require reversal.

As we have pointed out, the common-law record indicates that the defendant in the instant case was sentenced for a term of fifteen to twenty years in the State Penitentiary. Under the statute he is entitled to credit for the term he served under the previous conviction during the time the case was on appeal and before the conviction had been reversed. Section 121-14(d) (Ill Rev Stats 1965, c 38, § 121-14(d)) of the statute provides:

"In any case in which an appellant serves pending appeal any portion of the sentence imposed in the trial court and the judgment of the trial court is reversed by a reviewing court and a new trial ordered the appellant shall be given credit in any subsequent sentence for the time served pending appeal."

A further provision in the statute is the following (Ill Rev Stats 1965, c 38, § 119-3):

"Sentence Credit.) A person sentenced to imprisonment in a State penal or reformatory institution who is thereafter confined in any jail or other

323

State penal or reformatory institution because of such sentence shall be credited on such sentence with the time during which he was so confined unless he violates any good behavior regulations of such jail or institution or any statute while so confined. Such good time confinement may also be counted on good conduct diminution of sentence credit under such regulations as may be provided by the Department of Public Safety. The period of time during which any person was confined to answer to a charge which results in a sentence imposed on or after July 1, 1965 requiring such person to be imprisoned in a penitentiary or reformatory or any other penal institution of the State or of any of its political subdivisions prior to pronouncement of such sentence shall be credited on such sentence unless he violates any good behavior regulations of such jail or institution while so confined, and may be counted on good conduct diminution of sentence credit under such regulations as may be provided by the Department of Public Safety."

■■ ■ The court takes judicial notice that the Department of Public Safety gives the proper sentence credit under section 119–3. It would seem to be equally proper and appropriate that the same board should adjust the sentence credit required under section 121–14.

The sentence of the defendant in the instant case is fifteen to twenty years, subject to proper adjustment by the Department of Public Safety. The judgment is affirmed.

Affirmed.

ENGLISH, P. J. and DRUCKER, J., concur.