Docket No. 104414.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. JOHN
NAYLOR, Appellee.

*Opinion filed July 24, 2008.*

JUSTICE FREEMAN delivered the judgment of the court, with
opinion.

Justices Fitzgerald, Kilbride and Burke concurred in the judgment
and opinion.

Chief Justice Thomas dissented, with opinion, joined by Justices
Garman and Karmeier.

## OPINION

Following a bench trial in the circuit court of Cook County,
defendant, John Naylor, was convicted of several offenses relating to
the sale of heroin. Finding a violation of *People v. Montgomery*, 47 Ill.
2d 510 (1971), the appellate court reversed defendant's convictions
and remanded the cause for a new trial. 372 Ill. App. 3d 1. We
allowed the State's petition for leave to appeal (210 Ill. 2d R. 315(a))
and now affirm the appellate court.

## I. BACKGROUND

In April 2000, defendant was indicted on six counts relating to
possession of heroin with intent to deliver and delivery of heroin. On

August 11, 2004, the State entered a *nolle prosequi* as to two counts, and defendant was tried on the remaining four: possession of heroin with intent to deliver, delivery of heroin, possession of heroin with intent to deliver while on Chicago Housing Authority (CHA) property, and delivery of heroin on CHA property. 720 ILCS 570/401(d), 407(b)(2) (West 2000). Defendant waived a jury and the court conducted a bench trial.

The State's case in chief consisted of the testimony of two Chicago police officers and an evidence stipulation. Chicago Police Officer John Lewis testified as follows. On March 9, 2000, Officer Lewis was assigned to the narcotics and gang investigation section of the Chicago police department. He was working at 4429 South Federal Street, which is part of the Robert Taylor Homes, a CHA property. Officer Lewis and other police officers were conducting "Operation Corridor," which was an operation to suppress narcotics activity in the Robert Taylor Homes. Officer Lewis' role was to make a controlled narcotics purchase.

At approximately 10:20 a.m., Officer Lewis, in civilian dress, entered 4429 South Federal Street and proceeded to the fourth floor of the north stairwell with three other police officers in civilian dress: Officers Boggan, Boyd, and Espinosa. The officers met three individuals standing in the stairwell, one of whom asked Officer Lewis if he wanted "white." Based on his undercover experience, Officer Lewis understood "white" to refer to heroin. Officer Lewis identified defendant in court as the individual with whom he spoke. In response to defendant's solicitation, Officer Lewis said, "Yeah, one." He tendered to defendant a $10 bill from the department's "1505 fund." This refers to a fund of United States currency with prerecorded serial numbers, which the department uses to purchase illegal narcotics in a controlled environment. In return for the $10, defendant gave to Officer Lewis one tinfoil packet. Officer Boyd stood behind Officer Lewis in line for a purchase. All four officers made purchases. Officer Lewis did not know from whom the other officers made their purchases.

After the officers made their purchases, they retraced their steps down the stairwell and immediately exited the building together. They returned to their vehicles and radioed the descriptions of defendant and the other two individuals who were standing in the stairwell.

-2-

Police officers subsequently brought them out of the building. Officer Lewis saw defendant 10 to 15 minutes later, when Chicago Police Officer William McKenna led defendant out of the building. Officer McKenna gave to Officer Lewis the prerecorded $10 bill. Officer Lewis did not see Officer McKenna recover the prerecorded $10 bill from defendant. At some point Officer Lewis opened the packet and saw a white powder he suspected was heroin. He inventoried the packet with the prerecorded $10 bill.

Chicago Police Detective Deon Boyd testified as follows. At the beginning of every month, officers using the prerecorded fund personally record the serial numbers of the currency they use to make undercover drug purchases. On March 9, 2000, Detective Boyd was working as an undercover police officer with Officer Espinosa at 4429 South Federal Street, and he saw Officers Lewis and Boggan at that location. At least 20 Chicago police officers were involved in the operation. When Detective Boyd entered the building, several persons directed him to take the north stairwell to the fourth floor. When Detective Boyd reached the fourth floor, he saw a line of individuals purchasing narcotics. Officer Lewis was leaving when Detective Boyd got in line. When Detective Boyd reached the front of the line, he came into contact with a man whom Boyd identified in court as defendant. Detective Boyd said to defendant, "Let me get two." Defendant reached into a clear plastic bag, retrieved two tinfoil packets, and handed them to Detective Boyd. In exchange, Detective Boyd gave to defendant a prerecorded $20 bill. Detective Boyd did not see from whom Officers Lewis and Boggan bought drugs.

Detective Boyd and Officer Espinosa retraced their steps, exited the building, and returned to their undercover vehicle. They radioed the enforcement team that they completed the transactions and they described defendant. The enforcement team entered the building, converged on the fourth-floor stairwell, and arrested defendant "and several other individuals." Detective Boyd knew specifically that one of the individuals arrested was Kohler Parks, from whom he saw Officer Espinosa buy drugs. The enforcement team brought them all down. Detective Boyd saw Officer McKenna bring defendant out of the building. Officer McKenna gave to Detective Boyd the prerecorded $20 bill. Detective Boyd never saw Officer McKenna recover the prerecorded $20 bill from defendant. At some point

Detective Boyd opened the packet and saw a white powder he suspected was heroin. He inventoried the packet with the prerecorded $20 bill.

After Detective Boyd testified, the State offered a stipulation. If called as a witness, Timothy Tripp would testify as follows. He is a forensic chemist with the Illinois State Police Crime Laboratory. Tripp tested the powder from each of the tinfoil packets that Officer Lewis and Detective Boyd inventoried and submitted for analysis. The substance in the packet inventoried by Officer Lewis tested positive for the presence of 0.1 gram of heroin, and the substance in one of the packets inventoried by Detective Boyd tested positive for the presence of 0.1 gram of heroin. Defendant affirmatively agreed to the stipulation.

Defendant testified on his own behalf. On March 9, 2000, defendant was living in a ninth-floor apartment at 4429 South Federal Street. Sometime after 10 a.m., defendant left his apartment to pick up his son from kindergarten, which ended at 10:45 a.m. Defendant was walking down the stairs from his apartment when police officers attacked him, announced their office, and sprayed mace in his face. He denied selling drugs that day, and he denied possessing money from drug sales. Defendant did not remember on which floor he encountered the officers. Defendant could remember only being arrested with "a lot of people" and placed in a police wagon with five or six others. Defendant knew of Kohler Parks only as a neighbor in the building. Defendant testified: "I don't know him [Parks] personally." At the close of defendant's testimony, the defense rested its case.

In rebuttal, the State offered as evidence a certified copy of defendant's December 1990 conviction for aggravated battery. Defendant's trial counsel objected to its admission because the prior conviction was more than 10 years old. The trial court overruled defendant's objection, finding that defendant's prior conviction was less than 10 years old from when defendant allegedly committed the charged offenses. The court admitted into evidence the certified copy of defendant's prior conviction. The State rested its case.

At the close of arguments, the trial court found defendant guilty on all counts. The court subsequently sentenced defendant to six

years' imprisonment and imposed $2,720 in fines, fees, assessments, and costs.

Before the appellate court, defendant contended, *inter alia*, that the State violated *People v. Montgomery*, 47 Ill. 2d 510 (1971), by admitting into evidence a prior conviction that was over 10 years old at the time of trial to impeach his credibility. The appellate court observed that defendant's trial counsel failed to preserve the issue for appellate review by including it in a posttrial motion. However, the court concluded that the evidence was closely balanced and reviewed the issue. See 134 Ill. 2d R. 615(a). The court originally found no error. It held that defendant's prior conviction was admissible for impeachment because it was less than 10 years old at the time defendant allegedly committed the charged offenses. Defendant filed a petition for rehearing, and the appellate court withdrew its opinion.

The appellate court filed a new opinion, holding that defendant was erroneously impeached with his prior conviction. 372 Ill. App. 3d 1. Again observing that defendant procedurally forfeited the issue, the court reviewed the issue pursuant to the plain-error doctrine of Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). The court agreed "with the case law that applies the 10-year time period in *Montgomery* as running from the date of conviction or release from confinement, whichever is later, to the date of trial." 372 Ill. App. 3d at 7. Consequently, the court concluded that defendant was improperly impeached with a prior conviction that was nearly 14 years old at the time of trial. Accordingly, the appellate court reversed defendant's convictions and remanded the cause for a new trial. 372 Ill. App. 3d at 6-9. We allowed the State's petition for leave to appeal. 210 Ill. 2d R. 315(a).

## II. ANALYSIS

The State assigns error to the appellate court's reversal of defendant's convictions on two grounds. First, the State observes that defendant procedurally forfeited the issue of whether he was impeached in violation of *Montgomery*. The State contends that the appellate court incorrectly applied the plain-error rule to excuse defendant's procedural default. Second, the State contends that the endpoint of *Montgomery*'s 10-year time period should not be the date

of trial, but rather the earlier date of when defendant allegedly committed the charged offense.

Although defendant's trial counsel objected to the admission of the prior conviction at trial, defendant concedes that counsel failed to include this issue in his posttrial motion. "*Both* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.) *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Therefore, this issue is procedurally forfeited. See, *e.g.*, *People v. Moss*, 205 Ill. 2d 139, 168 (2001); *People v. Young*, 128 Ill. 2d 1, 38-40 (1989).

The appellate court excused defendant's procedural default under the plain-error doctrine of Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). This doctrine serves as " 'a narrow and limited exception to the general [rule of procedural default].' " *People v. Szabo*, 113 Ill. 2d 83, 94 (1986), quoting *People v. Pastorino*, 91 Ill. 2d 178, 188 (1982). We recently described the doctrine as follows:

> "We now reiterate that the plain-error doctrine allows a reviewing court to consider unpreserved error when (1) a clear or obvious error occurs and the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error, or (2) a clear or obvious error occurs and that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007), explaining *People v. Herron*, 215 Ill. 2d 167, 186-87 (2005).

Accord *People v. Hall*, 194 Ill. 2d 305, 335 (2000).

Under both prongs of the plain-error doctrine, " 'the burden of persuasion remains with the defendant.' " *Piatkowski*, 225 Ill. 2d at 565, quoting *Herron*, 215 Ill. 2d at 187. When a defendant fails to establish plain error, the result is that the "procedural default must be honored." *People v. Keene*, 169 Ill. 2d 1, 17 (1995). In addressing the State's plain-error contention, it is appropriate to determine whether error occurred at all. *People v. Hudson*, 228 Ill. 2d 181, 191 (2008); *People v. Sims*, 192 Ill. 2d 592, 621 (2000). This requires " 'a

substantive look' " at the issue. *People v. Johnson*, 208 Ill. 2d 53, 64 (2003), quoting *Keene*, 169 Ill. 2d at 17.

### A. Did the Trial Court Commit Error?

Before the appellate court, defendant contended that the trial court violated *Montgomery* in admitting defendant's prior conviction for impeachment. This case requires consideration of *Montgomery*'s 10-year time limit for impeaching a witness by evidence of a prior conviction. The State contends that in a criminal trial where the defendant testifies, the endpoint of the time limit should not be the date of trial, as the appellate court held, but rather the date when defendant allegedly committed the charged offense.

At common law, any person convicted of an infamous crime was deemed incompetent to be a witness and was not permitted to testify in any civil or criminal trial. This disqualification was based on the belief that conviction of such a crime rendered the prospective witness inherently unworthy of trust. *People v. Spates*, 77 Ill. 2d 193, 201-02 (1979); see generally 2 J. Wigmore, Evidence §§519 through 521 (Chadbourn rev. ed. 1979). In Illinois, this harsh rule is abrogated in civil cases by section 8–101 of the Code of Civil Procedure (735 ILCS 5/8–101 (West 2006) (originally enacted at 1867 Ill. Laws 183)), and in criminal cases by section 115–16 of the Code of Criminal Procedure of 1963 (725 ILCS 5/115–16 (West 2006) (originally enacted at Ill. Rev. Stat. 1874, ch. 38, par. 426)). These statutes provide that no person shall be disqualified to testify based on a prior conviction, but such conviction may be admitted to affect the credibility of the witness. 725 ILCS 5/115–16 (West 2006); 735 ILCS 5/8–101 (West 2006); *Spates*, 77 Ill. 2d at 202.

When the defendant testifies in a criminal case, the State may not impeach the defendant's testimony by cross-examination as to his or her prior conviction, but rather only by introducing the record of the prior conviction. *People v. Moses*, 11 Ill. 2d 84, 88 (1957); see J. Corkery, Illinois Civil & Criminal Evidence §609.101, at 336 (2000). When a defendant testifies on his own behalf, the record of the defendant's prior conviction is not introduced, and cannot be considered, for the purpose of proving the defendant's guilt or innocence of the crime for which the defendant is being tried; rather,

it is admissible only for the purpose of discrediting the defendant as a witness. *People v. Cox*, 195 Ill. 2d 378, 384 (2001); see *People v. Nichols*, 235 Ill. App. 3d 499, 509 (1992); *People v. Wilson*, 43 Ill. App. 3d 583, 584 (1976). Relying on the predecessor provision of section 115–16 of the Code of Criminal Procedure of 1963, this court held: "The introduction of such record of conviction for the purpose of affecting the credibility of a witness, or the defendant who has voluntarily testified, is provided for by statute. That statute fixes no limitation as to the time of such previous conviction." *People v. Buford*, 396 Ill. 158, 162 (1947); see, *e.g.*, *People v. Smith*, 90 Ill. App. 2d 310, 320 (1967) (relying on *Buford*, upholding admission of prior conviction that was 26 years old at the time of defendant's trial).

Indeed, prior to this court's decision in *Montgomery*, this court did not recognize any discretion in a trial court to decide whether to permit impeachment through admission of a prior conviction. *People v. Ray*, 54 Ill. 2d 377, 382 (1973). Prior to *Montgomery*, "it was the settled rule that proof of conviction of an infamous crime was *always* admissible for the purpose of affecting the credibility of a witness." (Emphasis added.) *People v. Lowery*, 1 Ill. App. 3d 851, 852 (1971). The trial court was required to admit such evidence to impeach the credibility of a defendant who testified. This rule often presented a defendant in a criminal proceeding with a no-win dilemma: either the defendant testified and was impeached by any prior conviction available to the State, regardless of the conviction's probative value or potential prejudice, or the defendant refused to testify, thereby denying the trier of fact the opportunity to hear his or her side of the story and implying guilt from the failure to testify. See *People v. Medreno*, 99 Ill. App. 3d 449, 450-51 (1981). This was the law in Illinois up to 1971, when this court decided *People v. Montgomery*.

In *Montgomery*, this court reconsidered the predecessor provision to section 115–16 of the Code of Criminal Procedure. The *Montgomery* court rejected the view expressed in *Buford* that a trial judge must admit evidence of a witness' prior conviction, however irrelevant and prejudicial, simply because the prosecutor chooses to offer it. Because the statute provides that a prior conviction "may" be shown to impeach the credibility of a witness, the *Montgomery* court reasoned that the admissibility of the prior conviction should be a matter within the discretion of the trial judge. *Montgomery*, 47 Ill. 2d

at 515; see *People v. Williams*, 161 Ill. 2d 1, 36 (1994) (discussing *Montgomery*).

The *Montgomery* court next adopted the 1971 proposed draft of Rule 609 of the Federal Rules of Evidence (proposed Rule 609), quoting at length therefrom. *Montgomery*, 47 Ill. 2d at 516-19, quoting 51 F.R.D. 391, 393 (1971). The *Montgomery* rule provides that

> "for the purpose of attacking a witness' credibility, evidence of a prior conviction is admissible only if (1) the crime was punishable by death or imprisonment in excess of one year; or (2) the crime involved dishonesty or false statement regardless of the punishment. [3] In either case, however, the evidence is inadmissible if the judge determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice. *Montgomery*, 47 Ill. 2d at 516. In addition, evidence of a conviction under this rule is inadmissible if a period of more than 10 years has elapsed since the date of conviction or release of the witness from confinement, whichever is later. *Montgomery*, 47 Ill. 2d at 516." *People v. Williams*, 173 Ill. 2d 48, 81 (1996).

See J. Corkery, Illinois Civil & Criminal Evidence §609.101, at 326-27 (2000).

Congress ultimately enacted Rule 609 in a different form. However, this court did not intend that the standards for impeachment announced in *Montgomery* would change to correspond to Federal Rule 609 as enacted. This court intended that the provisions of proposed Rule 609, as adopted in *Montgomery*, should be followed in future cases. *People v. Yost*, 78 Ill. 2d 292, 295 (1980). We also observe that this court expanded the *Montgomery* rule to apply to civil proceedings and abolished the distinction between "infamous" crimes and misdemeanors regarding the admissibility of prior convictions in civil and criminal trials. *Knowles v. Panopoulos*, 66 Ill. 2d 585, 589 (1977).

Relevant to this case, the *Montgomery* rule provides:

> " '(b) Time Limit. Evidence of a conviction under this rule is not admissible if a period of more than 10 years has elapsed

since the date of conviction or of the release of the witness from confinement, whichever is the later date.' " *Montgomery*, 47 Ill. 2d at 516, quoting 51 F.R.D. 391 (proposed Rule 609(b)).

The Advisory Committee's note explained that proposed Rule 609(b) established a specific time limit that should be construed as imposing an outer limit on the trial judge's discretion. *Montgomery*, 47 Ill. 2d at 519, quoting 51 F.R.D. 393, Advisory Committee's note. This court has repeatedly viewed a prior conviction that lies beyond the prophylactic 10-year limit as outside of the trial court's discretion. See, *e.g.*, *People v. Warmack*, 83 Ill. 2d 112, 123-25 (1980); *People v. Yost*, 78 Ill. 2d 292 (1980). In conformity with this view, our appellate court has consistently interpreted proposed Rule 609(b) as eliminating discretion from the trial court to admit evidence of a prior conviction for impeachment purposes where a period of 10 years has elapsed from the date of the conviction or the release of the witness from confinement, whichever is later. *People v. Gandy*, 227 Ill. App. 3d 112, 127 (1992) (collecting cases); *People v. Yost*, 65 Ill. App. 3d 386, 389 (1978), *aff'd*, 78 Ill. 2d 292 (1980). Further, the proponent of the prior conviction has the responsibility of presenting evidence of a subsequent release date. Absent such evidence, a trial court must not resort to any presumptions regarding a release date and must employ the date of conviction. *Yost*, 78 Ill. 2d at 297.

In the present case, defendant's prior conviction was entered in December 1990. In its brief before this court, the State concedes that it did not present evidence of a release date and, therefore, defendant's date of conviction is the operative date for purposes of *Montgomery*. Defendant was tried in August 2004, which was 13 years and 8 months subsequent to defendant's prior conviction. However, the trial court considered the endpoint of *Montgomery*'s 10-year time limit to be the date defendant allegedly committed the charged offenses, March 2000, which was nine years and three months subsequent to the prior conviction. Consequently, the trial court found that defendant's prior conviction fell within *Montgomery*'s 10-year time limit and, over objection, admitted the prior conviction into evidence. The appellate court ultimately reversed, holding that the endpoint of *Montgomery*'s 10-year time limit is the date of trial. 372 Ill. App. 3d at 6-7. We agree with the appellate court.

In *Montgomery*, this court calculated the age of the defendant's prior conviction as "21 years before *the trial of this case*." (Emphasis added.) *Montgomery*, 47 Ill. 2d at 512. However, the State views this calculation as of no consequence. In its brief before this court, the State observes that in *Montgomery* the defendant's prior conviction was entered "more than 10 years after [*sic*] the subsequent offense, arrest, trial and testimony. Therefore, there was no reason for this Court to analyze which of the potential ending dates should be applied." Indeed, the State contends that this "is an issue of first impression in Illinois."

We cannot accept this contention. In *Montgomery*, this court fully understood the meaning of its calculation in relation to the defendant's trial. "The focus of *Montgomery* was on crimes which bear upon the defendant's truthfulness as a witness." *Williams*, 161 Ill. 2d at 39. The reason for impeaching a witness with a prior conviction is to affect the credibility of the witness' testimony at trial. When a criminal defendant testifies at trial, the purpose of impeachment is to show background facts that directly relate to "testimonial deception," *i.e.*, whether the trier of fact ought to believe the defendant's testimony rather than the testimony of conflicting witnesses. *Williams*, 161 Ill. 2d at 37, quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967); *Montgomery*, 47 Ill. 2d at 516. The *Montgomery* rule placed that determination within the trial court's discretion, with the 10-year time limit as a bar to its exercise.

Further, in subsequent cases, this court has repeatedly applied *Montgomery*'s 10-year time limit by measuring the age of the prior conviction in relation to the defendant's trial. See, *e.g.*, *People v. Lawler*, 142 Ill. 2d 548, 563-64 (1991) (observing that defendant's prior convictions were in 1979, he was released in 1986, and the trial was in 1988); *People v. Reddick*, 123 Ill. 2d 184, 202-03 (1988) (observing that defendant's trial was held within 10 years of the witness' release from prison for the witness' prior conviction); *Warmack*, 83 Ill. 2d at 124 (concluding that "the conviction occurred 11 years before trial, did not result in confinement and therefore lay beyond the 10-year limit"); *Yost*, 78 Ill. 2d at 293-94 (calculating prior conviction at 10 years and 10 months earlier than "the defendant had testified at trial"). Also, when this court has discussed other aspects of the *Montgomery* rule, it has repeatedly described the 10-year limit

in relation to the defendant's trial. See, *e.g.*, *People v. Harvey*, 211 Ill. 2d 368, 383 (2004) ("the witness' conviction or release from confinement, whichever date is later, occurred less than 10 years from the date of trial"); *Cox*, 195 Ill. 2d at 383; *People v. Atkinson*, 186 Ill. 2d 450, 456 (1999). Far from being "an issue of first impression in Illinois," we conclude that the rule is evident.[1]

To be sure, in the 37 years subsequent to *Montgomery*, a few appellate court decisions have expressed contrary language. In each case, the court calculated the *Montgomery* 10-year time limit in relation to the date when the defendant allegedly committed the charged offense. See, *e.g.*, *People v. Brown*, 334 Ill. App. 3d 854, 864 (2002); *People v. McKay*, 279 Ill. App. 3d 195, 202 (1996); *People v. Harris*, 220 Ill. App. 3d 848, 853 (1991); *People v. Spurlark*, 74 Ill. App. 3d 43, 53 (1979). In each of these cases, the court did not–and could not–cite to any authority for its calculation. In light of this court's consistent view of *Montgomery*'s 10-year time limit, and the appellate court's widespread conformance therewith, the mistake in these few appellate court decisions was most likely inadvertent, but erroneous nonetheless.

Also, the State's proposed calculation of *Montgomery*'s 10-year time limit, in relation to the date when the defendant allegedly committed the charged offense, would not make sense in the majority of trials where the *witness* will not have a charged offense. To the extent that the State proposes a separate rule for criminal defendants who testify on their own behalf, such a suggestion is not well-taken.

---

[1]In the years following *Montgomery*, our appellate court has expressed widespread conformity with this court's calculation of the 10-year time limit in relation to the defendant's trial or the witness' trial testimony. See, *e.g.*, *Gandy*, 227 Ill. App. 3d at 127; *People v. Harlan*, 75 Ill. App. 3d 168, 172 (5th Dist. 1979); *People v. Overturf*, 12 Ill. App. 3d 441, 445 (4th Dist. 1973); *People v. Petty*, 3 Ill. App. 3d 951, 954 (4th Dist. 1972); *O'Bryan v. Sandrock*, 276 Ill. App. 3d 194, 195 (3d Dist. 1995); *People v. Parsons*, 88 Ill. App. 3d 45, 46 (3d Dist. 1980); *People v. Whirl*, 351 Ill. App. 3d 464, 467 (2d Dist. 2004); *People v. Link*, 100 Ill. App. 3d 1000, 1007 (2d Dist. 1981); *Nichols*, 235 Ill. App. 3d at 509; *People v. Norwood*, 164 Ill. App. 3d 699, 703 (1st Dist. 1987); *People v. Owens*, 46 Ill. App. 3d 978, 993 (1st Dist. 1977).

As our discussion indicates, impeachment by use of a prior conviction applies to any *witness*, not only to a criminal defendant. In *Knowles*, this court expanded *Montgomery* to govern civil trials. *Knowles*, 66 Ill. 2d at 589.

Given that *Montgomery*'s 10-year time limit operates to remove a witness' prior conviction from the trial court's discretion, the State argues that its proposed calculation of the 10-year time limit promotes efficient trial management. According to the State, setting the endpoint of *Montgomery*'s 10-year time limit as the date when the defendant allegedly committed the charged offense lengthens the time line in which the trial court can exercise its discretion, "which allows the trial judge to consider the greatest range of circumstances which may be relevant to whether a defendant's prior conviction should be admitted to impeach his credibility and to consider the equities of admission on a case-by-case basis."

We cannot maximize a trial court's discretion at the price of deprecating the rationale of *Montgomery*'s 10-year limit. "The philosophy underlying this time limitation is that 10 years of conviction-free living demonstrates sufficient rehabilitation in the witness' credibility to attenuate any probative value, thus making those prior convictions *per se* inadmissible." *Medreno*, 99 Ill. App. 3d at 451. Or, put another way, after 10 years from the witness' conviction or release from confinement, whichever is later, "the conviction has lost its relevance to the issue of credibility." *Gandy*, 227 Ill. App. 3d at 127. Indeed, the State's proposed calculation of *Montgomery*'s 10-year limit, based on when the defendant allegedly committed the charged offense, presumes that the defendant must be guilty. To state this presumption is to reject it. However, we observe that the running of the 10-year time limit could be tolled on the ground that a defendant's "effort to manipulate the judicial system negates the positive inference supposedly to be drawn from ten years of law abiding behavior." 28 C. Wright & V. Gold, Federal Practice & Procedure §6136, at 261 (1993).

We now expressly hold what is plainly evident in this court's many applications of the *Montgomery* rule, and what the appellate court has widely recognized in conformity therewith. *Montgomery*'s 10-year time limit should be calculated in relation to the date of the

defendant's trial.[2] To the extent that *Brown*, *McKay*, *Harris*, and *Spurlark* apply a different calculation, those decisions are hereby overruled. Accordingly, we agree with the appellate court that the circuit court erred in calculating *Montgomery*'s 10-year time limit in relation to the date when defendant allegedly committed the charged offenses, thereby finding that defendant's prior conviction came within the time limit.

## B. Bench Trial: Was the Error Reversible?

Having recognized that the trial court committed error in admitting into evidence defendant's prior conviction of aggravated battery to impeach his testimony, we must next determine, under our plain-error rule, whether reversible error occurred. Absent reversible error, there can be no plain error. *Herron*, 215 Ill. 2d at 187; *People v. Johnson*, 208 Ill. 2d 53, 64 (2003). Under the plain-error doctrine, a defendant may persuade a reviewing court to excuse a procedural default and consider unpreserved error where: (1) the evidence is closely balanced so as to preclude argument that an innocent person was wrongfully convicted; or (2) the alleged error affected the fairness of the defendant's trial and challenged the integrity of the judicial process. *Hall*, 194 Ill. 2d at 335. In this case, defendant argues that the evidence presented at his trial was closely balanced. We agree.

We acknowledge that the court conducted a bench trial. Of course, the rules of admissibility of evidence are the same whether a trial be had with or without a jury. *People v. Arendarczyk*, 367 Ill. 534, 538 (1937). However, when a trial court is the trier of fact a reviewing court presumes that the trial court considered only

---

[2]Our holding accords with the predominant view of courts that have addressed this issue. See, *e.g.*, *Haley v. United States*, 799 A.2d 1201, 1205 (D.C. App. 2002); *Hodge v. State*, 332 Ark. 377, 396, 965 S.W.2d 766, 775-76 (1998); *State v. Axiotis*, 569 N.W.2d 813, 815-16 (Iowa 1997); *People v. Coddington*, 188 Mich. App. 584, 596, 470 N.W.2d 478, 485 (1991); *State v. Brown*, 357 N.C. 382, 390, 584 S.E.2d 278, 283 (2003); *State v. Demeritt*, 148 N.H. 435, 442, 813 A.2d 393, 399 (2002); *State v. Scriven*, 339 S.C. 333, 344, 529 S.E.2d 71, 77 (App. 2000).

admissible evidence and disregarded inadmissible evidence in reaching its conclusion. *People v. Robinson*, 30 Ill. 2d 437, 439 (1964); *People v. Wallenberg*, 24 Ill. 2d 350, 354 (1962). Thus, although error occurred, we must determine whether the error is such that would require reversal of defendant's convictions. See, *e.g.*, *Sims*, 192 Ill. 2d at 628-29 (assuming error, court found it to be harmless, reasoning that absent reversible error, there could be no plain error).

We conclude that the trial court's erroneous admission of defendant's prior conviction to impeach his testimony constitutes reversible error. We base our conclusion on both the law and the record before us.

As a matter of law, we must presume that the trial court considered defendant's prior conviction "only with respect to the purpose for which it was competent." *People v. Lacey*, 24 Ill. 2d 607, 611 (1962). However, *Montgomery*'s 10-year time limit rendered defendant's prior conviction incompetent to impeach his testimony. When the evidence was admitted, it served no proper legal purpose. Therefore, there is no basis upon which we can presume that the trial court's evidentiary ruling does not require reversal. See *People v. Jackson*, 202 Ill. 2d 361, 371 (2002).

As a matter of fact, the presumption that a court in a bench trial considered only competent evidence in reaching its finding "may be rebutted where the record affirmatively shows the contrary." *People v. Gilbert*, 68 Ill. 2d 252, 258-59 (1977). After defendant testified, the following colloquy occurred:

> "THE COURT: *** Defense, any other witnesses?
>
> [Defense Counsel]: No. We will rest.
>
> THE COURT: All right. State?
>
> [Prosecutor]: Yes, Judge. By way of rebuttal, State is offering the certified copy of conviction of this defendant under 90 CR 1551101. This is the certified copy of conviction.
>
> * * *
>
> [Defense Counsel]: For the record I think we would object.
>
> [Prosecutor]: The charge is, Judge–
>
> THE COURT: Hold on. Hold on. Go ahead.

-15-

[Prosecutor]: The charge for which he was found guilty was aggravated battery. Four years Illinois Department of Corrections.

THE COURT: And that sentence was on December 14th, 1990?

[Prosecutor]: That's correct, Judge.

THE COURT: Okay. And your objection.

[Defense Counsel]: I think–Well, there is a question of the ten years, when it begins. Is it from the conviction or does it come when the person is released from custody if they receive a custodial–

[Prosecutor]: Based upon timing after release from custody in jail, Judge.

THE COURT: Okay. And since that is the issue, when were you released from custody?

[Prosecutor]: Some time after December 14th, 1990, Judge. It's a 1990 conviction, therefore, the case arouse [*sic*] in 1990 and he was given four years Illinois Department of Corrections.

In any event, we have not reached December 14th, 2004, so it's–he was given the four years Illinois Department of Corrections, Judge, when this case–

THE COURT: Right. This case was in December of 2000, correct?

[Prosecutor]: On March of 2000.

THE COURT: On March of 2000.

[Prosecutor]: When this case sprung into being. We agree we are outside however–

THE COURT: At the time of the incident it was inside of ten?

[Prosecutor]: Yes.

THE COURT: Your objection will be overruled in regards to that certified copy coming into evidence."

The court then heard closing arguments prior to convicting defendant of the charged offenses.

" 'Where an objection has been made to the evidence and overruled, it cannot be presumed that the evidence did not enter into the court's consideration. The ruling itself indicates that the court thought the evidence proper.' " *People v. Hampton*, 96 Ill. App. 3d 728, 731 (1981), quoting *People v. De Groot*, 108 Ill. App. 2d 1, 11 (1968); see *People v. Alford*, 111 Ill. App. 3d 741, 744 (1982); *People v. Fair*, 45 Ill. App. 3d 301, 306 (1977). In this case, the above-quoted colloquy shows that the trial court considered defendant's prior conviction to fall within *Montgomery*'s 10-year time limit. Indeed, the court actively participated with the State in searching for the erroneous date. We must conclude that the trial court improperly considered this incompetent evidence and, consequently, committed reversible error.[3]

### C. Should Defendant's Procedural Default Be Excused?

Having concluded that the trial court committed reversible error, we must next determine whether the evidence presented at defendant's trial was closely balanced. "When error occurs in a close case, we will opt to 'err on the side of fairness, so as not to convict an innocent person.' " *Piatkowski*, 225 Ill. 2d at 566, quoting *Herron*, 215 Ill. 2d at 193. Following closing arguments, the trial court reviewed the evidence presented. After recounting the testimony of the two police officers, the court recounted defendant's testimony *in toto* as follows:

> "The defense argues that though [*sic*] the confusion here the officers didn't make the purchase from [defendant]. [Defendant] has testified he just came out of his house walking downstairs or running the [*sic*] down the stairs and he is maced. He doesn't say who maces him, where the mace was

---

[3]Nowhere in the above-quoted colloquy, in either the court's words or in counsel's arguments, is it shown that *Montgomery*'s balancing test was considered. The court expressly considered only whether the prior conviction fell within the 10-year rule. Nevertheless, there is no error if the trial court does not expressly articulate the balancing test as long as the record makes clear that the court was applying the *Montgomery* rule. *Williams*, 173 Ill. 2d at 83.

at, but that's all he remembers. I believe he used the term 'All I can remember' at least six times.

He testifies that the next thing he remembers really is being downstairs being separated into–from the paddy wagon into a squad–a car he said. He does know Kohler Parks, but he doesn't remember seeing that individual."

The appellate court agreed with defendant "that the evidence was closely balanced and that the admission of the evidence of his prior conviction for impeachment may have influenced the trial court's credibility determination." 372 Ill. App. 3d at 6.

Before this court, the State assigns error to the appellate court's conclusion that the evidence at defendant's trial was closely balanced. In its reply brief, the State argues:

"Defendant's trial did *not* boil down to a credibility contest between the police officers and defendant. *** Defendant overlooks the fact that *two* police officers testified that defendant sold drugs to them, that the marked funds used to buy the drugs were returned to the purchasing officers by the arresting officer, and that defendant stipulated that the substance in the tinfoil packets inventoried by the two police officers tested positive for heroin. Thus, this case is not a mere credibility determination." (Emphases in original.)

The State misapprehends the nature of the evidence presented at defendant's trial.

The trial in the present case was indeed a contest of credibility. On one side, the two officers testified that defendant sold them heroin. On the other side, defendant testified that he had left his apartment to pick up his son from school when he was mistakenly swept up in a drug raid. Defendant's testimony is credible in that it is consistent with much of the officers' testimony and the circumstances of his arrest. Both defendant and the officers were relating their respective versions of the same underlying incident–a drug raid in a residential housing complex. Given these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that

of defendant. Indeed, in its appellant's brief, after quoting a portion of the trial court's recitation of defendant's testimony, the State argues:

> "Based on these statements by the trial court, it is clear that it *believed* the testimony of the officers and rejected defendant's testimony \*\*\*. More importantly, it is evident that the trial judge did not find defendant's account of what happened *credible* because defendant could not remember what happened or who allegedly sprayed mace at him." (Emphases added.)

Thus, the State apparently acknowledges that defendant's convictions turned on the trial court's assessment of defendant's credibility.

The State's emphasis that *two* police officers testified against defendant does not make the State's case overwhelming. The State presented only the testimony of the two officers regarding the sale of the heroin. Each officer admitted that he never saw Officer McKenna recover the prerecorded currency from defendant. For whatever reason, the State did not call Officer McKenna to testify. Arguably, defendant's erroneously admitted incompetent prior conviction was the State's only successful attack on defendant's testimony.

Therefore, at the close of the testimony in this case, the trial court was faced with two different versions of events, both of which were credible. Moments after erroneously admitting incompetent evidence for the purpose of impeaching defendant's credibility, the court concluded that it believed the officers' version of events.[4] Based on this record, we "opt to 'err on the side of fairness' " (*Piatkowski*, 225 Ill. 2d at 566, quoting *Herron*, 215 Ill. 2d at 193), and reverse defendant's convictions and remand the cause for a new trial.

Despite the occurrence of reversible error, our dissenting colleagues are of the opinion that defendant should not receive a new trial because the evidence adduced at defendant's trial was not closely balanced. The dissent characterizes this court as improperly

---

[4]Indeed, the trial court's view of defendant's credibility apparently clouded its memory of defendant's testimony. Detective Boyd testified that Kohler Parks was another individual whom he knew was arrested in the raid. Defendant clearly denied knowing Parks. However, according to the trial court, defendant testified that he knew Parks.

substituting our judgment for that of the trier of fact and reweighing the evidence. Slip op. at 24 (Thomas, C.J., dissenting, joined by Garman and Karmeier, JJ.). After repeating the testimony adduced at trial and the trial court's findings, the dissent concludes: "[I]t is clear that the trial court could find that defendant was not a credible witness even absent the admission of his prior conviction." Slip op. at 25 (Thomas, C.J., dissenting, joined by Garman and Karmeier, JJ.). We disagree. Of course this evidence was closely balanced. The evidence boiled down to the testimony of the two police officers against that of defendant. Further, no additional evidence was introduced to contradict or corroborate either version of events. Thus, credibility was the only basis upon which defendant's innocence or guilt could be decided. See, *e.g.*, *People v. Agee*, 307 Ill. App. 3d 902, 906 (1999); *People v. Gagliani*, 210 Ill. App. 3d 617, 627 (1991).

Also, the dissent warns that this court "has created a rule holding that if the evidence at trial involves a contest of credibility, and the defendant testifies contrary to the prosecution's witnesses, the evidence will always be closely balanced." Slip op. at 26 (Thomas, C.J., dissenting, joined by Garman and Karmeier, JJ.). This fear is unreasonable. It is axiomatic that whether the evidence in a criminal trial is closely balanced depends solely on the evidence adduced in that particular case. Accordingly, our holding in this case in no way creates any legal rule that will "always" produce a particular result.

Rather, in this case, the essential task of the trial court, as the trier of fact, was to determine whose version of events to believe. The evidence of defendant's prior conviction, which the trial court erroneously considered, may have played an unacceptable part in the trial court's decision. Under the circumstances of this particular case, we cannot say that the improper impeachment did not prejudice defendant's right to a fair trial. See, *e.g.*, *People v. Schuning*, 106 Ill. 2d 41, 48-49 (1985); *Norwood*, 164 Ill. App. 3d at 703 (viewing evidence as not overwhelming and holding that erroneously admitted prior conviction may have played an important role in the credibility determination of the trier of fact; "That possibility requires that defendant be given a new trial"), citing *Schuning*, 106 Ill. 2d at 48-49; *Whirl*, 351 Ill. App. 3d at 467-68 (holding that *Montgomery* violation in that case "adversely affect[ed] the integrity of the criminal process"); *Parsons*, 88 Ill. App. 3d at 47 (holding that "[u]nder the

-20-

circumstances of the instant case we cannot agree that the error [*Montgomery* violation] was harmless"); *People v. Luna*, 81 Ill. App. 3d 246, 250 (1980) (given "the importance of the credibility issue in this case, we cannot say that the admission of defendant's prior conviction did not have effect upon the jury's verdict").

The dissent fails to apprehend the serious nature of the trial court's reversible error, which this court explained 37 years ago in *Montgomery*. Defendant's prior conviction came into this case only because he took the witness stand to testify in his own defense. The sole purpose of admitting defendant's prior conviction was to damage his credibility as a witness. The probative value of that prior conviction is based on the assumption that one who was convicted of aggravated battery 13 years ago will more likely than not testify falsely today. The prejudicial effect of this evidence is "unmistakable." *Montgomery*, 47 Ill. 2d at 514. *Montgomery* rendered defendant's prior conviction, being over 10 years old, legally incompetent.

However, the trial court erroneously considered this incompetent evidence. A court has no right to override the rules of evidence at trial merely because the case is tried to the court sitting without a jury. *People v. Reichert*, 352 Ill. 358, 361 (1933). This court explained long ago:

> "A defendant charged with crime has a right to a fair and impartial trial according to the rules of law requiring the exclusion of incompetent and prejudicial evidence. Regardless of his depravity of character or how full of crime his past life may have been, he is entitled to be tried only upon competent evidence and to stand before the jury unprejudiced by improper reference to his former crimes. The law does not provide one method for trying innocent persons and another for trying guilty persons. All persons are presumed to be innocent of the crime with which they are charged until they have been proven guilty beyond a reasonable doubt according to the established methods of procedure." *People v. Lund*, 382 Ill. 213, 217 (1943).

Defendant deserved no less at his trial.

Although we conclude that the evidence is closely balanced, we nevertheless find, after carefully reviewing the record, that the

evidence was sufficient to prove defendant guilty beyond a reasonable doubt. We therefore find that there is no double jeopardy impediment to a new trial. By this finding, however, we reach no conclusion as to defendant's guilt that would be binding on retrial. See, *e.g.*, *Piatkowski*, 225 Ill. 2d at 566-67; *People v. Tenney*, 205 Ill. 2d 411, 442 (2002); *People v. Nelson*, 193 Ill. 2d 216, 228 (2000). Due to our disposition of this cause, we need not address the parties' alternative arguments.

### III. CONCLUSION

For the foregoing reasons, the judgment of the appellate court is affirmed.

*Affirmed.*

CHIEF JUSTICE THOMAS, dissenting:

I agree with the majority that *Montgomery*'s 10-year time limit should be calculated in relation to the date of defendant's trial. However, I disagree with the majority's conclusion that the evidence in this case was closely balanced and, therefore, that the error in this case was reversible. Accordingly, I dissent from the majority's judgment affirming the reversal of defendant's convictions and remanding for a new trial.

The evidence at defendant's bench trial was as follows. Officer John Lewis testified for the State that, on March 9, 2000, he was working undercover at 4429 South Federal Street in Chicago. Around 10:20 a.m., Officer Lewis took the north stairwell to the fourth floor of the building, where he was met by defendant. Defendant was standing with two other individuals. Defendant was wearing a blue leather jacket and blue jeans. Defendant asked Officer Lewis if he wanted "white," which Officer Lewis knew referred to heroin. Officer Lewis told defendant that he wanted one and gave defendant a prerecorded $10 bill. Defendant gave Officer Lewis a tinfoil packet that was later tested and identified as heroin. Officer Lewis then left the building and radioed the physical and clothing description of defendant. Approximately 10 to 15 minutes later, Officer William McKenna brought defendant out of the building. Officer Lewis

identified defendant as the person who had sold him the heroin. Officer McKenna later returned Officer Lewis' $10 prerecorded fund to him.

Officer Deon Boyd testified that on March 9, 2000, he was working undercover at 4429 South Federal Street in Chicago. When he entered the building, several persons in the corridor directed Officer Boyd to the fourth-floor stairwell. When he reached the fourth floor, Officer Boyd saw a line of individuals purchasing narcotics. Officer Lewis was leaving when Officer Boyd got in line. Officer Boyd testified that when he got to the front of the line, he was face to face with defendant. Officer Boyd told defendant "Let me get two," meaning two packages of narcotics. Officer Boyd gave defendant a $20 prerecorded bill, and defendant gave Officer Boyd two tinfoil packets. The parties stipulated that those packages tested positive for the presence of heroin. Officer Boyd then returned to his undercover vehicle and radioed defendant's description to the enforcement team. Officer McKenna brought defendant out of the building. Officer McKenna subsequently gave Officer Boyd his $20 in prerecorded funds. Officer Boyd believed that two or three other arrests were made simultaneously with defendant's arrest. Officer Boyd testified that an individual named Kohler Parks was arrested with defendant.

Defendant testified that on March 9, 2000, he was living at 4429 South Federal Street, apartment 902. Defendant testified that he was arrested on March 9, 2000, but denied that he had made any narcotics deliveries to any police officer, and denied that he was in possession of any money from drug sales. Defendant said that he was arrested with more than 15 other persons. Defendant said that he knew of Kohler Parks, but denied that he knew him personally. Defendant stated that on the day he was arrested, he was walking down the stairs to pick up his son from school. Defendant said that as he was walking down the stairs, he was sprayed in the face with mace and was jumped on, and then heard someone identify himself as a police officer. On cross-examination, defendant testified that all he remembered was coming down the stairs and being sprayed with mace. Defendant said that he was by himself in the stairwell when he was maced. Defendant did not know what floor he was on when he was maced.

In finding defendant guilty, the trial court recounted the testimony of the police officers, then discussed defendant's testimony. The trial court stated:

> "The defense argues that th[r]ough the confusion here the officers didn't make the purchase from [defendant]. [Defendant] has testified he just came out of his house walking downstairs or running the [*sic*] down the stairs and he is maced. He doesn't say who maces him, where the mace was at, but that's all he remembers. I believe he used the term 'All I can remember' at least six times.
>
> He testifies that the next thing he remembers really is being downstairs being separated into–from the paddy wagon into a squad–a car he said. He does know Kohler Parks, but he doesn't remember seeing that individual."

Based upon the preceding evidence, the majority finds that the trial in this case was a contest of credibility and that, therefore, the evidence was closely balanced. The majority notes that the two officers testified that defendant sold them heroin, while defendant claimed that he was walking down the stairwell to pick up his son from school when he was maced and arrested. The majority finds that, "[g]iven these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version, the trial court's finding of guilty necessarily involved the court's assessment of the credibility of the two officers against that of defendant." Slip op. at 18-19. The majority finds that "defendant's erroneously admitted incompetent prior conviction was the State's only successful attack on defendant's testimony." Slip op. at 19. The majority concludes that the trial court was faced with two credible versions of events, and moments after erroneously admitting incompetent evidence for the purposes of impeaching defendant's credibility, the court concluded that it believed the officers' version of events. Slip op. at 19. The majority therefore affirms the reversal of defendant's conviction and remandment for a new trial.

In reaching its conclusion, the majority has improperly substituted its judgment for that of the trier of fact and has reweighed the evidence. It is well settled that it is the function of the trier of fact to assess the credibility of witnesses, to determine the appropriate weight of the testimony, and to resolve conflicts or inconsistencies in the

evidence. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). A trier of fact is "not required to accept any possible explanation compatible with the defendant's innocence and elevate it to the status of reasonable doubt" (*People v. Herrett*, 137 Ill. 2d 195, 206 (1990)), nor is reversal warranted simply because a defendant claims that a witness was not credible (*Evans*, 209 Ill. 2d at 211-12). Thus, a trier of fact may disregard exculpatory accounts or other evidence that tends to support or be consistent with a defendant's innocence and rest its decision instead on circumstantial evidence of guilt presented by the State. *People v. Locascio*, 106 Ill. 2d 529, 537 (1985).

Here, the trial court determined that the two police officers were credible and that defendant was not. Based upon the record, it is clear that the trial court could find that defendant was not a credible witness even absent the admission of his prior conviction. Although the majority believes that the erroneously admitted prior conviction convinced the trial court that the officers were more credible than defendant, it is clear from the trial court's statement that it was defendant's testimony, particularly his repeated lack of recall, that convinced the trial court that defendant was not credible. In contrast to defendant's general denial and lack of recall, the testimony of the officers was consistent concerning the events surrounding defendant's arrest. Both officers testified that they purchased heroin from defendant using prerecorded bills, then returned to their undercover vehicles and radioed defendant's description to the enforcement team. Each officer saw Officer McKenna bring defendant out of the building, and each officer identified defendant as the individual that sold them heroin. Officer McKenna later returned the prerecorded bills to the officers. The mere fact that defendant testified to a version of events that contradicted the police officers did not render the evidence in this case closely balanced.

I also note that, as further support for its finding that the evidence was closely balanced, the majority suggests that the trial court did not accurately remember defendant's testimony. In a footnote, the majority states that "the trial court's view of defendant's credibility apparently clouded its memory of defendant's testimony" because the trial court stated that defendant testified he knew Kohler Parks, while defendant "clearly denied knowing Parks." Slip op. at 19 n.4. In fact, defendant testified that he "knew of" Kohler Parks, but denied

knowing him personally. Given defendant's testimony that he "knew of" Kohler Parks, I disagree with the majority that the trial court's memory of defendant's testimony was "clouded."

Whether evidence is closely balanced necessarily is determined on a case-by-case basis. The majority, however, effectively has created a rule holding that if the evidence at trial involves a contest of credibility, and the defendant testifies contrary to the prosecution's witnesses, the evidence will always be closely balanced. Based upon the facts of this case, I believe that the trial court properly determined that the police officers were credible and that defendant was not. Therefore, I would find that the evidence was not closely balanced and that the error in admitting defendant's prior conviction was harmless error. Consequently, I would affirm defendant's conviction. For that reason, I respectfully dissent from the majority's judgment affirming the reversal of defendant's conviction and remanding for a new trial.

JUSTICES GARMAN and KARMEIER join in this dissent.