# Illinois Official Reports

## Appellate Court

---

### *People v. Britt*, 2020 IL App (3d) 170548

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOSHUA M. BRITT, Defendant-Appellant. |
| District & No. | Third District<br>No. 3-17-0548 |
| Filed | February 14, 2020 |
| Decision Under Review | Appeal from the Circuit Court of Henry County, No. 16-CF-377; the Hon. Carol M. Pentuic, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James E. Chadd, Peter A. Carusona, and James Wozniak, of State Appellate Defender's Office, of Ottawa, for appellant.<br><br>Matthew Schutte, State's Attorney, of Cambridge (Patrick Delfino, Thomas D. Arado, and Justin A. Nicolosi, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| Panel | JUSTICE SCHMIDT delivered the judgment of the court, with opinion.<br>Presiding Justice Lytton and Justice McDade concurred in the judgment and opinion. |

**OPINION**

¶ 1     Defendant, Joshua M. Britt, appeals his conviction for violation of an order of protection. Defendant argues that his criminal history was used improperly during his bench trial when (1) the State introduced his prior domestic battery conviction during its case-in-chief, (2) the State cross-examined defendant about his prior criminal history, and (3) the court considered incompetent evidence of defendant's criminal history in finding defendant guilty of violating an order of protection. We reverse and remand.

¶ 2                                 I. BACKGROUND

¶ 3     The State charged defendant with violation of an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2016)). The information alleged that defendant, having acquired actual knowledge of the contents of an order of protection, knowingly came within 300 feet of A.B., a protected party, having previously been convicted of domestic battery.

¶ 4     The matter proceeded to a bench trial. On the agreement of the parties, the court took judicial notice of an order of protection against defendant in a prior case. Defendant's daughter, A.B., was included in the order as a protected party. Pursuant to the order of protection, defendant was not to be within 300 feet of A.B. except during his designated visitation time on alternating Sundays.

¶ 5     Tiffany Britt testified that defendant is her brother. On October 30, 2016, the Department of Children and Family Services (DCFS) allowed Tiffany to take custody of A.B. because A.B.'s mother had tried to harm herself, and defendant was only permitted to have visitation with A.B. On October 31, 2016, defendant took A.B. from Tiffany's custody without her permission. Defendant had gone trick-or-treating with Tiffany, A.B., and Tiffany's children. He told Tiffany that he was taking A.B. to Sarah Robinson's residence. Robinson was defendant's girlfriend, and defendant was living at Robinson's residence. Tiffany said that defendant was "a very angry person, and after Halloween that night, he just said he was taking [A.B.], and he took her." Tiffany stated that defendant "does what he wants to do and can be fearful." When asked what she meant by "fearful," Tiffany said that defendant could "put fear in people."

¶ 6     On November 2, 2016, Tiffany no longer wished to have custody of A.B. due to problems she was having with defendant. Defendant wanted A.B. to stay with him and Robinson, which was not allowed. Tiffany and defendant argued about the situation. Eventually, Tiffany did not want to "deal with it," so she called DCFS and asked them to take custody of A.B. On the morning of November 2, 2016, Tiffany called defendant and told him that she was coming to Robinson's residence to return A.B. to DCFS. Defendant yelled at Tiffany and asked her why she was doing this.

¶ 7     Tiffany arrived at Robinson's residence around 9:30 or 10 a.m., which was approximately 10 to 15 minutes after she spoke to defendant. Robinson, defendant, and A.B. were inside the residence. Defendant initially refused to open the door. Eventually, he opened the door. Defendant told Tiffany that he would not let her take A.B. to DCFS and that he would go to jail first. Tiffany called 911. Police officers arrived at the residence, and A.B. was given to Tiffany. Tiffany returned A.B. to the custody of DCFS.

¶ 8        Officer Gene DeValkenaere testified that he was dispatched to a residence on the morning of the incident. When he arrived, he saw defendant and Tiffany talking animatedly on the street outside the residence. He knew them both prior to the incident. DeValkenaere asked defendant and Tiffany what was going on. Defendant said they were just arguing. Tiffany said she was there to pick up defendant's daughter, and she asked defendant to retrieve A.B. from the residence. Tiffany told DeValkenaere that she had a temporary order of custody for A.B. through DCFS. Defendant eventually agreed to bring A.B. to Tiffany. Tiffany told DeValkenaere that there was an order of protection in place and she believed defendant was violating the order. DeValkenaere arrested defendant later that day.

¶ 9        The State submitted a certified copy of defendant's prior conviction for domestic battery. After confirming that the State was submitting evidence of defendant's prior conviction, defense counsel stated: "Then I'm not going to object to it." The State rested.

¶ 10       Robinson testified that defendant was her boyfriend but he had never lived at her residence. Robinson knew there was an order of protection prohibiting defendant from being around A.B., but she believed that defendant could be with A.B. if Tiffany was also there. Robinson testified that Tiffany called her around 7 to 7:30 a.m. on the morning of the incident and asked her to babysit A.B. Robinson agreed. Tiffany dropped A.B. off at Robinson's house, and she came to pick A.B. up around 9 to 9:30 a.m. Defendant was not at Robinson's house when Tiffany arrived. Robinson told Tiffany to wait in her car while Robinson got A.B ready to go. Defendant arrived at Robinson's house while Tiffany was waiting in her car. He went to Tiffany's car and started talking to her. The police arrived, and Robinson heard Tiffany tell defendant to get A.B. Defendant went to Robinson's front door and asked her to get A.B. ready because Tiffany was taking her.

¶ 11       Defendant testified that he was working as a roofer in Clinton, Iowa, on the morning of the incident. He arrived at work around 7:30 a.m. Tiffany called defendant at approximately 8 a.m. and told him that she was giving A.B. back to DCFS. Defendant then drove to Robinson's house because he needed to talk to someone. He did not know that A.B. would be there. When defendant arrived at Robinson's residence, he saw Tiffany's car parked on the street. Defendant approached Tiffany's car and asked Tiffany what was going on. Tiffany was on her phone and did not respond to him. Tiffany told defendant to get A.B., and the police arrived.

¶ 12       Defendant testified that he had never lived with Robinson and that A.B. had not been staying at Robinson's house for a few days before Tiffany picked her up. Defendant stated that he and Tiffany did not have the best relationship.

¶ 13       Defendant testified that he knew the order of protection stated that he could have supervised visits with A.B. every Sunday and anyone he chose could supervise. Defendant stated that when DCFS gave Tiffany custody of A.B., a caseworker told defendant that he could have contact with A.B. if Tiffany was present. The court asked defendant if the order of protection stated that his visitation had to be supervised by a family member who had completed a supervisor affidavit. Defendant replied, "I am not specific what [*sic*] it says. I just know that the judge said that I can—because [the petitioner] agreed to one of my family members being present." Defendant said that he had a copy of the order, but he was unaware that the family member supervising his visits with A.B. had to complete an affidavit.

¶ 14       On cross-examination, the State asked defendant if he had been convicted of a felony in the past 10 years. Defendant said yes. The State asked defendant if he had been convicted of aggravated battery and aggravated criminal sexual abuse. Defendant said yes.

¶ 15      The defense rested, and the State did not present any rebuttal evidence.

¶ 16      The court found defendant guilty. During its pronouncement of guilt, the court reasoned:

> "[Defendant] knew he had an order of protection and couldn't have the child, knew he had an order of protection. That he saying [*sic*] he wasn't aware of the fine details, you've got a court order against you. It's got specific requirements and restrictions on visitation and time. And if you violate that, you can be criminally prosecuted, and he has been criminally prosecuted for domestic before. So he knew that he had an [order of protection]. He knew what would happen if he didn't comply with the terms and conditions of that [order of protection]. He knew because he'd been through this before."

The court also reasoned:

> "I believe that the defendant took the child and wouldn't give the child back. [Tiffany] got frustrated and upset, and given the fact that [defendant] has convictions for aggravated battery and other violent criminal offenses, and when she tells the Court I was afraid of him and concerned and I didn't want to have to deal with him because of his violent behavior, there's a definite criminal history that she's aware of because she's his sister, and I find that completely credible."

¶ 17      The court sentenced defendant to three years' imprisonment.

¶ 18                        II. ANALYSIS

¶ 19      Defendant argues that the State improperly used his criminal history during his bench trial when it introduced his prior domestic battery conviction during its case-in-chief. Defendant also argues that the State used an improper method of impeachment by cross-examining defendant about his prior convictions for aggravated battery and aggravated criminal sexual abuse rather than introducing certified copies of these convictions on rebuttal. Finally, defendant argues that the court improperly considered his prior convictions in finding him guilty of violating an order of protection.

¶ 20      Defendant acknowledges that he failed to preserve these errors for review. However, defendant argues that his counsel was ineffective for failing to preserve each of these errors, that each error constituted first-prong plain error, and that the cumulative effect of the three errors deprived him of his right to a fair trial.

¶ 21      We first consider defendant's argument that his counsel was ineffective for failing to object when the State introduced his prior domestic battery conviction in its case-in-chief. "To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Domagala*, 2013 IL 113688, ¶ 36.

¶ 22      The State concedes that the domestic battery conviction was improperly introduced in the State's case-in-chief and that defense counsel performed deficiently in failing to object to the introduction of the conviction. We accept the State's concession on this point. The State used defendant's prior conviction for domestic battery to enhance the offense of violation of an order of protection from a Class A misdemeanor to a Class 4 felony, but it was not an element of the offense. See 720 ILCS 5/12-3.4(a)(1), (d) (West 2016); 725 ILCS 5/111-3(c) (West 2016). Accordingly, it should not have been disclosed during the trial. 725 ILCS 5/111-3(c) (West 2016).

¶ 23 Having found that counsel performed deficiently in failing to object to the introduction of defendant's domestic battery conviction in the State's case-in-chief, we consider whether counsel's failure to object prejudiced defendant. To show that he suffered prejudice, defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). "A 'reasonable probability' is defined as 'a probability sufficient to undermine confidence in the outcome.' " *People v. Simpson*, 2015 IL 116512, ¶ 35 (quoting *Strickland*, 466 U.S. at 694).

¶ 24 We find that counsel's failure to object to the improper introduction of his prior domestic battery conviction prejudiced defendant. Where, as in the instant case, a bench trial is held, there is a presumption that the court considered only competent evidence in reaching its ruling. *People v. Naylor*, 229 Ill. 2d 584, 603-04 (2008). However, this presumption may be rebutted where the record affirmatively shows the contrary. *Id.* Here, the court's statements during the pronouncement of guilt showed that it considered defendant's domestic battery conviction in determining his guilt. The court stated that it found Tiffany's testimony that she feared defendant to be credible "given the fact that [defendant] has convictions for aggravated battery and other violent criminal offenses." The "other violent offenses" the court referenced must necessarily have been defendant's domestic battery and aggravated criminal sexual abuse convictions, as they were the only other prior convictions introduced at the trial. It appears that the court also considered defendant's domestic battery conviction in finding that his testimony was not credible when he indicated that he did not understand the specifics of the order of protection. After noting that defendant had been prosecuted for "domestic" before, the court stated: "So he knew that he had an [order of protection]. He knew what would happen if he didn't comply with the terms and conditions of that [order of protection]. He knew because he'd been through this before."

¶ 25 Because this case turned on the credibility of the witnesses and the court used defendant's domestic battery conviction to find Tiffany more credible and to find him less credible, there is a reasonable probability that the result of the proceeding would have been different if the conviction had not been introduced.

¶ 26 This conviction is subject to reversal based on the above ineffective assistance of counsel claim alone. However, because the other errors raised by defendant may recur at a new trial, we will discuss them briefly.

¶ 27 The second error raised by defendant is that the State erred in cross-examining him about his prior convictions for aggravated battery and aggravated criminal sexual abuse, which were introduced to impeach defendant's credibility, rather than introducing certified copies of the convictions on rebuttal. The State correctly concedes that its method of impeachment at the trial was erroneous. See *id.* at 594 ("When the defendant testifies in a criminal case, the State may not impeach the defendant's testimony by cross-examination as to his or her prior conviction, but rather only by introducing the record of the prior conviction.").

¶ 28 Finally, defendant argues that the court improperly considered his convictions for aggravated battery and aggravated criminal sexual abuse as evidence of his propensity to commit the charged offense and to bolster Tiffany's credibility. These convictions were introduced to impeach defendant's credibility, and accordingly, they should have been considered only for their effect on *defendant's* credibility. *People v. Hester*, 271 Ill. App. 3d 954, 958 (1995) ("Generally, evidence of a testifying defendant's prior conviction may be

admitted solely to impeach his testimony.").

¶ 29                                    III. CONCLUSION

¶ 30        For the foregoing reasons, we reverse the judgment of the circuit court of Henry County and remand the matter for a new trial.

¶ 31        Reversed and remanded.