2020 IL App (1st) 172190-U

No. 1-17-2190

March 31, 2020

First Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 16 CR 15045 |
| | ) | |
| DELVON MCCUNE, | ) | Honorable |
| | ) | Vincent M. Gaughan, |
| Defendant-Appellant. | ) | Judge, presiding. |

JUSTICE WALKER delivered the judgment of the court.
Justices Hyman and Pierce concurred in the judgment.

**ORDER**

¶ 1     *Held*:   We reverse defendant's conviction for attempt residential burglary and remand for a new trial where the trial court's improper Rule 431(b) admonitions were plain error because the evidence was closely balanced.

¶ 2     Following a jury trial, defendant Delvon McCune was found guilty of attempt residential burglary (720 ILCS 5/8-4 (West 2016), 720 ILCS 5/19-3(a) (West 2016)) and sentenced to 75 months' imprisonment. He appeals arguing that the trial court committed plain error because it failed to properly instruct the jury pursuant to Illinois Supreme Court Rule 431(b) (eff. July 1,

2012) and the evidence was closely balanced. We reverse the conviction and remand for a new trial.

¶ 3                                BACKGROUND

¶ 4     During jury selection, the court informed the venire that a "defendant is not required to prove his innocence, nor is he required to present any evidence on his own behalf." The court did not ask the venire any questions at this juncture.

¶ 5     The court then explained that (1) all defendants are "presumed to be innocent"; (2) the burden of proof was beyond a reasonable doubt; (3) the State has the burden of proof; and (4) a defendant has the right to testify or not testify, and his decision to not testify cannot be held against him. Regarding each of these principles, the court asked if the potential jurors had any "problems" accepting and "applying" them. No venirepersons responded.

¶ 6     At trial, Hanh Chi Do testified that she lived in a second-floor apartment on the 800 block of West Aldine Avenue. On September 19, 2016, sometime after 7 p.m., she heard a "big bang" coming from the bedroom where her balcony is located. She entered the bedroom, turned on the lights, and noticed that the screen door to the balcony was open. This was unusual because she typically leaves that door closed. Do turned off the lights and went to the window, where she saw someone on her neighbor's porch. She identified defendant as that person in court. Do had never seen defendant before, did see defendant on her balcony, and had not given him permission to be on her balcony. She ran to the kitchen and called the police, who arrived within three minutes. Do told the officers what happened.

¶ 7     Shortly thereafter, while standing on her balcony, Do saw defendant walking in the alley behind her home with an officer. She informed another officer that she recognized defendant as

the man who was on her neighbor's porch. Do examined her balcony for damage. The screen door was broken, and she found an indentation in the frame of the balcony door. The door did not have any marks the last time she saw it, which was earlier that day or the day before. Do also had gardening tools on her balcony that she kept in a bucket. After she identified defendant to the officers, they returned a "scoop" and gloves that were in the bucket the last time she saw them. The prosecutor showed Do People's Exhibits 1 through 9, which she identified as photographs depicting her apartment, balcony, and the scoop and bucket immediately following the incident. She identified People's Exhibits 3 through 6 as depicting the new damage on her balcony door.

¶ 8    On cross-examination, Do acknowledged that she was last on the balcony 12 to 24 hours prior to the incident, and she did not go on the balcony until officers were with her. It had been at least a day since she used the gloves and scoop.

¶ 9    Chicago police officer Jamie Ada Maldonado testified that she responded to the incident at Do's home on September 19, 2016, with her partner Officer Mohammed Ali. She parked in front of the building and went to Do's apartment while Ali went to the alley. Over her radio, she learned that Ali had detained a suspect. She went to the alley and saw Ali with the suspect, whom she identified as defendant in court. Do identified defendant and told Maldonado that gloves and a small shovel were missing from the balcony. Maldonado then searched defendant's backpack and recovered the items Do had described.

¶ 10    On cross-examination, Maldonado testified that defendant told Ali that he climbed Do's balcony to "smoke a blunt." Maldonado intended to conduct a show-up procedure with Do, but decided not to after Do volunteered that she saw defendant in the alley with two officers and

recognized him as the man on her neighbor's porch. While in the apartment, Maldonado saw what she believed were pry marks on Do's balcony door, but she did not know what caused them.

¶ 11    Detective Cheryl Bronkema testified that she responded to the scene with her partner Detective Robert Rose, spoke to Do, and inspected the apartment. She learned that a suspect had been detained, and later interviewed that suspect, whom she identified as defendant in court. The interview occurred at the Area North police station. After Rose Mirandized defendant, he initially stated he went to Do's balcony to "smoke a blunt." Then, he admitted that he took "a trowel and some gloves" from the balcony because "his wife had a green thumb." He pried open the screen door with the gardening tool and attempted to pry open the balcony door, but stopped and "jumped off" the balcony after Do turned on the light. When asked how he made the "eight-foot jump" from the balcony, defendant said he was "blessed with good feet."

¶ 12    Bronkema ordered an evidence technician to investigate Do's apartment. The technician took pictures of the balcony. Bronkema did not order the technician to recover fingerprints because defendant told Bronkema that she knew "what [he was] going to do with" the gloves, which Bronkema understood to mean that defendant wore the gloves to avoid leaving fingerprint evidence. On cross-examination, Bronkema admitted that defendant's statement was not memorialized in writing or recorded, though there were rooms at Area North that had recording equipment.

¶ 13    Defendant testified that he climbed onto the balcony to "roll up a blunt" in a "hidden" place. While there, he stole gardening tools and gloves because he is "clepto [sic]." He "smoked" on the balcony for 15 minutes, then jumped down to the alley. Officers arrived moments later and apprehended him. The officers asked defendant if he had tried to break into a house, which he

denied. Defense counsel asked, "what did you tell the police when you went to the police station?" Defendant answered that he "told them that I wanted to smoke and that's why I was back there." Defendant added that the officers asked, "[w]hy are these tools and *** gloves in your backpack and I told them." Defendant testified that he did not attempt to break into the apartment or pry open a door. He acknowledged prior convictions for residential burglary and aggravated robbery.

¶ 14    On cross-examination, defendant said he was with his friend Mike prior to climbing the balcony but left because his friends do not like it when he smokes. He denied jumping onto a nearby patio. Defendant agreed that there were other places to hide in the alley, including some that would have been easier to reach than Do's balcony. He further agreed that he did not use the balconies of two other apartments in which lights were on but denied jumping off Do's balcony because someone turned on the lights. Defendant claimed to have a "club foot," but was still able to jump eight feet off the balcony.

¶ 15    The jury found defendant guilty of attempt residential burglary. The court denied defendant's motion for judgment notwithstanding the verdict or a new trial. After a hearing, the court sentenced defendant to 75 months' imprisonment and denied his motion to reconsider sentence.

¶ 16                                    ANALYSIS

¶ 17    On appeal, defendant contends that the trial court improperly admonished the venire under Rule 431(b). Specifically, he argues that the court (1) failed to ask the venire any questions about the principle that he did not have to introduce evidence, and (2) failed to inquire whether the venire "understood" any of the four principles enumerated in Rule 431(b). Defendant acknowledges that he did not preserve this issue below and asks this court to exercise plain error review.

¶ 18    The plain error doctrine allows for consideration of unpreserved errors where a "clear or obvious" error occurred at trial and (1) "the evidence is so closely balanced that the error alone threatened to tip the scales of justice against the defendant, regardless of the seriousness of the error," or (2) "that error is so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process, regardless of the closeness of the evidence." (Internal quotation marks omitted). *People v. Sebby*, 2017 IL 119445, ¶ 48. Defendant argues that the first prong applies. We must first determine whether a clear or obvious error occurred. *Id.* ¶ 49.

¶ 19    Rule 431(b) requires a trial court to ask "each potential juror, individually or in a group" if they understand and accept that (1) the defendant is presumed innocent, (2) the State must prove that the defendant is guilty beyond a reasonable doubt, (3) the defendant does not have to introduce evidence on his behalf, and (4) if the defendant does not testify, it cannot be held against him. Ill. S. Ct. R. 431(b) (eff. July 1, 2012). The court must inquire whether the venire both understands and accepts each of the four principles. See *People v. Belknap*, 2014 IL 117094, ¶ 46 ("the trial court's failure to ask whether the jurors understood the principles constitutes error alone").

¶ 20    Here, the trial court instructed the venirepersons that defendant did not have to present evidence but made no inquiry as to whether they understood and accepted this principle. Additionally, the trial court did not ask whether the venire understood any of the four principles, only whether they had any problems accepting and applying the principles. Thus, the court committed clear error.

¶ 21    Having determined that the court committed clear error, we must now decide whether the evidence at trial was closely balanced. *Sebby*, 2017 IL 119445, ¶¶ 50-52. When determining whether evidence is closely balanced, the reviewing court must conduct a "commonsense

assessment" of the entire record, including evidence on the elements of the charges as well the witnesses' credibility. *Id.* ¶ 53. The issue "does not involve the sufficiency of close evidence but rather the closeness of sufficient evidence." *Id.* ¶ 60. The defendant has the burden to show that "the evidence is closely balanced," but "ha[s] no burden to present any evidence or to testify himself at trial." *People v. Piatkowski*, 225 Ill. 2d 551, 567 (2007). If a defendant chose to testify, however, the reviewing court can "consider his testimony when evaluating the closeness of the evidence." *People v. Anaya*, 2017 IL App (1st) 150074, ¶ 99. A defendant need not make any additional showing regarding prejudice in first-prong cases because "[t]he only question ***, once clear error has been established, is whether the evidence is closely balanced." *Sebby*, 2017 IL 119445, ¶ 69.

¶ 22    In cases where there is only testimonial evidence and each side offers credible accounts, the evidence may be closely balanced. *Id.* ¶ 63. A case is not automatically closely balanced, however, because a defendant presented his own version of events; instead, the reviewing court should consider the credibility of the defendant's version, and any extrinsic evidence, in making its determination. *Id.*; see also *People v. Phagan*, 2019 IL App (1st) 153031, ¶ 141; *People v. Lopez*, 2012 IL App (1st) 101395, ¶ 88.

¶ 23    Relevant here, a defendant is guilty of attempt residential burglary if he takes a substantial step towards entering the "dwelling place of another," "knowingly and without authority," and with the "intent to commit therein a felony or theft." 720 ILCS 5/8-4 (West 2016); 720 ILCS 5/19-3(a) (West 2016).

¶ 24    At trial, Do testified that she saw a figure on her balcony, then moments later saw defendant on her neighbor's porch. Both Do and Maldonado testified that Do's balcony door had pry marks.

Do testified that the marks were not there 12 to 24 hours before the incident, and the marks were also confirmed by photographic evidence. When officers arrested defendant, he had gardening tools in his backpack that belonged to Do. Bronkema testified that defendant gave a statement in which he admitted that he took the tools and used one of them to attempt to pry Do's balcony door open, only stopping when she turned on the bedroom lights. Defendant testified that he climbed on Do's balcony to smoke cannabis, stole the items, and then returned to the alley. He maintained that he never attempted to enter Do's apartment and denied telling Bronkema that he tried to pry a door open.

¶ 25    After a commonsense assessment, we find that the evidence at trial was closely balanced. This matter turned on a credibility determination. Do testified that the pry marks were not present before the incident. Defendant testified that he climbed on the balcony and took the tools, but never attempted to enter Do's apartment. "Given these opposing versions of events, and the fact that no extrinsic evidence was presented to corroborate or contradict either version," the jury's ruling here "necessarily involved [the jury's] assessment of the credibility" of the witnesses. *People v. Naylor*, 229 Ill. 2d 584, 607 (2008). Therefore, the evidence was closely balanced and the trial court's improper Rule 431(b) admonitions constituted plain error. *Id.* at 608; *Sebby*, 2017 IL 119445, ¶¶ 63, 72.

¶ 26                                    CONCLUSION

¶ 27    Though the evidence was closely balanced, we find that it was sufficient to sustain the jury's verdict, and a retrial presents no double jeopardy issue. See *Piatkowski*, 225 Ill. 2d at 567. Because the trial court committed plain error in its Rule 431(b) admonitions, defendant's conviction is reversed and the case is remanded to the circuit court for further proceedings.

¶ 28     Reversed and remanded.